(6 Misc. Rep. 445.)

In re BROAT et al.

(Supreme Court, Special Term, Albany County.    January 20, 1894.)

1. ELECTIONS AND VOTERS—POWERS OF STATE EXECUTIVE COMMITTEE.
    The decision of the state executive committee of a political party as to the organization of a county committee of such party is not conclusive in an action involving that question.

2. SAME—DIVISION OF COMMITTEE—SEPARATE ORGANIZATION.
    Where the minority faction of a political organization secedes, and organizes separately, the decision of the majority faction that certain persons were duly elected members at a caucus of the party is not conclusive, but the question is reviewable by the court.

3. SAME—REMOVAL OF CHAIRMAN OF CAUCUS.
    Where the chairman of a caucus declares that certain nominees are elected, without taking a vote, and refuses to take a vote thereon, and refuses to recognize other nominations, the electors present may elect another chairman.

4. SAME—ADJOURNMENT OF CAUCUS.
    Where there is so much disorder and confusion at a caucus that a fair ballot cannot be had, the caucus may be adjourned to another day.

5. SAME—ORGANIZATION OF TOWN COMMITTEE.
    Where three members of a town committee meet after notice to the others, and elect a chairman, such election is valid; and one of the three cannot afterwards unite with the two who did not attend the meeting, and elect another person chairman.

6. SAME—RULES OF PROCEDURE.
    In the absence of rules adopted by a political organization, such organization is governed by the common-law rules that the act of the majority is the act of the committee; that such act must be done when all are present, or have had notice to be present; and that they have no power to act, except in session.

Application by Hiram Broat and others to determine the validity of certain nominations for office.

Henderson & Bell, (J. A. Steele, of counsel,) for applicants.
A. M. Mills, (George W. Smith, of counsel,) for respondents.

HERRICK, J.    This is an application under section 65 of chapter 680 of the Laws of 1892, known as the "Election Law," which section reads as follows:

"A certificate of nomination which is in apparent conformity with the provisions of this article shall be valid, unless written objection thereto shall be filed in the office in which the certificate is filed within three days after the filing of the certificate.    If such objection be filed, notice thereof shall be forthwith mailed to all candidates who may be affected thereby, addressed to them at their respective places of residence, as given in the certificate. The officer with whom the certificate is filed shall, in the first instance, pass upon the validity of such objection, and his decision shall be final, unless an order shall be made in the matter by a court of competent jurisdiction, or by a justice of the supreme court at chambers, on or before the Wednesday preceding the election.    Such order may be made summarily upon application of any party interested, and upon such notice of not less than twenty-four hours, as the court or judge may require."

On the 13th day of October, 1893, a certificate of nomination of candidates for county officers was filed in the county clerk's office of Herkimer county, which certificate purported to be a certificate of nominations made by the Democratic party of that county.    On October 16, 1893, another certificate of nominations of other candidates for county officers was filed in said county clerk's office, also purporting to be a certificate of nominations for county officers made by the Democratic party of that county.    Both certificates are, upon their face, in apparent conformity with the requirements of the election law.    Written objections to each certificate were filed with the county clerk within three days after the filing of each certificate.    The principal objection made to each is that the nominations therein certified to are not nominations made by a duly-authorized convention of the Democratic party of Herkimer county. Two conventions, purporting to be regular Democratic conventions, had been held in said county.    The convention that nominated the candidates whose certificate of nomination was filed October 13th was called by the Democratic committee, whose chairman was Daniel E. Herlehey; and the convention whose nominations were set forth in the certificate filed October 16th was called by the county committee, whose chairman was Frederick M. Lewis.    Each claimed to be the only regular Democratic county committee of Herkimer county, and the only committee of the party authorized to call conventions therein.    This necessitates an examination into the organizations of such county committees.    For convenience, hereafter, we will speak of the organizations and branches of the party as the Herlehey and Lewis committees, conventions, organizations, and parties.

The county clerk came to the conclusion that the Herlehey organization was the regular Democratic organization in that county, and decided to print the ballots of their candidates, that is, that he would recognize the certificate filed October 13th as the certificate of the regular Democratic organization of that county.    Pursuant to the provisions of section 65 of the election law heretofore quoted,

the candidates of the Lewis party applied to a justice of the supreme court, who made an order returnable at this special term.

At the outset of the argument, it is claimed that the question of regularity has been passed upon by the executive committee of the Democratic state committee, and the regularity of one of the organizations in Herkimer county determined by that body, and recognized by it as the only Democratic organization. This claim is not a valid one. In proceedings of this character, the decisions of party conventions, committees, or caucuses are not binding, and have no weight with the court. One of the very purposes of the law is to determine whether the action of such bodies is in conformity with the laws of the state. Recent legislation has been such as to bring within the law the action of all party caucuses, conventions, and committees, and subjects them to the supervision and control of the courts. It has at last become recognized that under our form of government the primaries, caucuses, and conventions of parties should be surrounded by all the safeguards, and be conducted with the same conformity to law, that our regular elections should be; and whether they have been so conducted is to be determined by the courts, in the same manner as every other controversy that is brought before them. In re Woodworth, (Sup.) 16 N. Y. Supp. 147–152, the court said:

"Where the duty is cast upon courts and judges of determining the regularity and fairness of political methods, those methods must be subjected to the same tests as would those of any other body of men whose good faith is questioned; and no court or judge would be justified in sustaining them when found to be inconsistent with that degree of sound morals which must characterize an ordinary affair of business, even though they be recognized and approved by senatorial and state conventions of the same political organizations. The trend of public opinion, as well as of legislation, at the present time, appears to be in favor of a radical reform in our political methods, and it is the plain duty of all good citizens, and especially those clothed with judicial authority, to encourage such a sentiment with all the force they can command."

Now comes the consideration of which, in truth, was the regular county committee. That brings us ultimately to the examination of the caucuses in the several towns of Herkimer county. Section 52 of chapter 680 of the Laws of 1892, as amended by chapter 370 of the Laws of 1893, provides as follows:

"Every primary held by any political party, organization or association, for the purposes of choosing candidates for office, or the election of delegates to conventions or for the purpose of electing officers of any political party, organization or association, shall be presided over and conducted by officers to be selected in the manner prescribed by the rules or regulations of the party, organization, or association holding such primary."

Prior to the year 1893, there was only one Democratic organization in Herkimer county. It does not appear that it had any written or printed rules or regulations for the holding of conventions, caucuses, or primaries, but the following were conceded upon the argument to be the rules and regulations of the party in that county, to wit:

"That town committees are to be elected at the caucuses for the first county convention, held after the general election in the fall. That each town com-

mittee shall be composed of five members, who shall all be residents and electors of the town; and in towns composed of more than five election districts a member of the town committee shall be elected from each election district, and who shall be an elector and resident of such election district. That each town committee shall have a meeting and select one of their number for chairman, who shall be county committeeman for such town for the ensuing year. The caucuses to elect delegates to a county convention or to select town committees shall be held (one for each town) upon the same day, in each and every town throughout the county; such day to be designated by the county committee, and named in the call for such convention. That each town committee shall name the hour of the day and designate the place for holding such caucus."

In this case the county convention in and for Herkimer county to elect delegates to the state and senatorial convention was called by the then regular Democratic county committee for September 30, 1893, and the day designated by said committee for holding the caucus or primaries in the several towns of said county was September 22, 1893. Calls were issued and notices posted by the chairman of the county committee, and the town committees of the several towns. Such calls and notices specified that the purposes of the caucuses or primaries so called were for the selection of three delegates to represent said town in said county convention, and also for the purpose of selecting a town committee for the ensuing year. A sharp contest ensued throughout the county. Delegates were elected to the county convention, town committees and members of the county committee were chosen. After the adjournment of the convention to elect delegates to the state convention the county committee met for organization. For some reason, which does not clearly appear in the papers before me, the committee did not organize at that time, but adjourned until October 4, 1893. At that time 18 of the 19 towns in the county were represented at the committee meeting. As to 15 of the towns, there was no contest as to who had been elected chairman of the town committee, and thereby elected member of the county committee. In three of the towns—German Flats, Newport, and Winfield—there were contests as to who had been elected. From the town of Ohio two persons presented themselves, claiming to be the proxy of the representative of that town, to wit, Edmund Comstock and Ezra Beckwith; and that left 14 towns as to which there was no contest. It is conceded that 8 of the persons whose seats were uncontested were adherents of Herlehey, and 6 adherents of Lewis. The secretary of the committee appears to have been elected unanimously. There are some questions which, for the purpose of this case, it is not necessary to decide, as to who at this time acted as chairman. However that may be, a motion was made by one of the Herlehey delegates that S. D. Cary, of German Flats, be seated as a county committeeman. That motion was amended by one of the Lewis delegates that W. H. Kittle be seated as the county committeeman from the town of German Flats. The amendment was put to a vote and lost. The original motion was then put, and declared carried. All of the 14 uncontested delegates appear to have participated in these proceedings. Upon the motion to seat Cary being declared carried, the adherents of Lewis, 6 in number of the

14, withdrew to an adjoining room, which appears to have been separated from the room where the committee met by folding doors. The 8 Herlehey men of the uncontested 14, together with Cary, who had just been admitted, remained in the room, proceeded with their meeting, and decided to admit Nicholas W. Carrigan from the town of Newport, and Ezra Beckwith as proxy or substitute from the town of Ohio, and Thomas Smith from the town of Winfield, and elected Herlehey chairman of the county committee so constituted, in place of Devoe, who was presiding, or claiming to preside, at the time the 6 members left the room. The secretary, who was originally elected unanimously by the 14 members, continued to act as the secretary of the Herlehey committee. The 6 members who had gone into the adjoining room seated the persons who were contesting the seats of those who were seated by the Herlehey organization from the towns of German Flats, Newport, Ohio, and Winfield, and elected Lewis chairman of the committee so organized. Formerly the facts as I have so far stated them would have been sufficient to settle any controversy as to regularity. When the majority of those whose seats were uncontested decided as to who of the contestants should be admitted to a convention or committee, party loyalty and obedience to party usage required the minority to acquiesce. Here, as soon as a single case was decided against them, they abandoned the meeting without further effort, leaving the majority of uncontested members to proceed with the organization, they themselves proceeding to form a new committee. But, as first stated, the decisions of committees or conventions are in no wise binding upon courts, and thus I am compelled to investigate the question, as to whether the 8 of the 14 members decided correctly in admitting the person they did to membership in the committee.

This leads to a consideration of the caucuses held in the towns of Winfield, German Flats, and Newport. Party caucuses should be the fair, full, and free expression of the party will, and such expression should not be thwarted by sharp practice, or throttled by force or fraud. And while it is not to be expected that political caucuses will be conducted with the order and decorum of a church meeting or Sunday school, still fair play and good faith should prevail, and a substantial compliance with the party and state law be compelled. Bearing in mind these principles, let us examine how the caucuses in question were conducted, as appears from the affidavits used in this motion, and as to those affidavits, voluminous in number. I am a stranger to the persons making them, and I can only test the truth of the statements made before me by the number of affidavits on each side, the means of knowledge of the affiants, and the intrinsic probability of their stories. From those affidavits weighed and tested, as I have stated, I find the following: As to the town of Winfield, there was an affidavit made by three persons, in which they state that "there was no opposition to the election of convention delegates or the town committee; the caucus was open and free; and that there was ample time for the nomination of an opposing ticket, but none was made, and no objection

was made during the caucus." On the other hand, there were the affidavits of ten people who attended the caucus "that delegates were nominated by some person attending the caucus;" that immediately upon such nomination being made, the chairman declared the said persons elected, without having a vote of the electors present; that then and there these deponents and others, being upwards of five, demanded of the chairman that the election at said caucus for delegates and county committeemen for the town should be by ballot, which was refused by the chairman; that deponents then and there protested against the method by which such delegates were chosen, and demanded of the chair that it should put to the caucus the question of said election of delegates, and especially that the chair should call for the noes as to the choice of the said persons as delegates, which the chairman refused to do, and peremptorily declared the said persons to have been elected and chosen as delegates to said convention, although in fact no vote or expression of the choice of the electors present had been taken or ascertained. The affiants then go on to state that an attempt was made to nominate other persons, and other names were presented by them to be voted for, but the chairman refused to entertain or listen to such nominations, and refused to put the names of the persons so attempted to be nominated, or either of them, before the caucus to be voted upon, and refused to heed or recognize the nomination of any others than those that had first been nominated; that thereupon the persons so protesting against the action of the chairman organized another caucus in the same room, with a chairman and secretary duly sworn according to law, and proceeded to elect delegates to the convention and members of the town committee, who in turn elected a chairman of such town committee and members of the county committee. It should need no argument to convince any person that the action of the chairman was grossly irregular. The chairman is not the whole caucus. He is "but the servant of the house, to declare its will, and obey implicitly all its commands." Cush. Man. § 294. It is his duty to put motions properly made to a vote. He has no right to declare a motion or resolution carried without a vote being taken, unless by unanimous acquiescence. The act of the chairman in declaring the persons nominated as delegates and committeemen elected, without taking a vote, refusing to take a vote thereon, and refusing to recognize any other nomination, was a nullity. Instead of acting as the servant of the caucus, he acted as its master; instead of declaring its will, and obeying its commands, he attempted to substitute his will and commands for that of the caucus. The delegates were selected by him, not by the caucus. It would be a burlesque upon the primary election law to recognize persons so chosen, or rather designated, as regularly elected. When the chairman refuses to perform the duties of a chairman, or arrogates to himself the power lodged in the meeting or caucus itself, the caucus or meeting has power or authority to elect another chairman in his place. "The presiding officer, being freely elected by the members, by reason of the confidence which they have in him, is removable by them, at their pleasure, in the

same manner, whenever he becomes permanently unable, by reason of sickness or otherwise, to discharge the duties of his place, and does not resign his office; or whenever he has, in any manner, or for any cause, forfeited or lost the confidence upon the strength of which he was elected." Id. § 299. In this case electors present were perfectly justified in electing another presiding officer, and the persons elected at the caucus presided over by the secondly elected chairman were the only ones regularly and legally elected from that town.

As to the town of German Flats, the evidence presented before me, including the affidavits of the five members of the town committee, under whose direction the caucus was called, is overwhelmingly to the following effect: That the chairman of the town committee called the caucus to order. That two nominations were made for chairman of the caucus. A ballot box was produced, and they proceeded to elect the chairman by ballot. There were several hundred persons present,—the estimates vary from three to six hundred. The balloting was accompanied by great disorder and confusion, which lasted for an hour and a half or more. The platform was occupied by the chairman of the town committee as chairman during these proceedings, and by the person having charge of the ballot box. The platform was invaded, the ballot box wrested from its custodian, carried away to another part of the hall and broken into. It was again wrested from its then possessor, and returned to the person originally having charge of it. While the balloting was progressing, and during the struggle in the convention, a motion was made to adjourn until the next day at 2 o'clock in the afternoon. The chairman who presided, or attempted to preside, during the attempted organization of the caucus, declared the motion carried, and it was announced by him and one other member of the town committee, and the caucus was adjourned until the next day. The affiants state that the motion to adjourn was carried by a large majority; that no appeal was taken from the decision of the temporary chairman; the meeting adjourned; the lights were turned out; and the assembly, or at least part of it, dispersed. Subsequently, on the same evening, a portion of those present (it does not appear how many) organized a caucus in the same hall, and elected delegates to the county convention and members of the town committee. The chairman of the town committee caused circulars to be distributed and posted, announcing the adjournment of the caucus until the next day at half past 2 o'clock. At that time he called the caucus to order, a chairman, with proper officers, was elected, and they proceeded to elect delegates to the county convention and five members of the town committee, the members of which committee elected one Cary as chairman of the town committee and delegate to the county committee. The fact as to the disturbance, confusion, and riot at the caucus held on the evening of the 22d was so overwhelmingly established that really the only thing to be considered is as to whether, under such circumstances, the adjournment of the caucus to the next day was lawful, and whether the delegates and com-

mitteemen could, under such circumstances, be lawfully elected on the 23d of the month, instead of the 22d. The objection that the delegates were elected on the 23d, whereas the caucus was called to be held on the 22d, is not, I think, under the facts disclosed, a valid objection. A meeting called for one day, if for any good and sufficient reason it is unable to perform and complete the duties it was called for, may properly adjourn to another day. It seems to me that it must at all times be in the power of a meeting to protect itself from disorder, and, if it finds its proceedings being broken in upon, prevented, or delayed, that it may adjourn for the purpose of securing protection, attaining order, and enabling it to conduct its proceedings in an orderly and proper manner. To hold otherwise would put it in the power of a minority of lawless and disorderly persons to practically control the proceedings of all public meetings. The law-abiding and peaceable, although in a majority, would be, for all practical purposes, controlled by the lawless minority of disturbers. No question is raised but what the chairman of the town committee was the proper person to preside until a chairman of the caucus was elected. I am of the opinion, therefore, that the delegates and committeemen elected on the 23d of October were the legally and regularly elected ones, and that the member of the county committee selected by the town committee there elected was the regular member of the town committee from the town of German Flats.

In the case of the town of Newport no question arises as to the town caucus; the controversy is as to who was elected chairman of the town committee. There is a certificate, signed by three members of the town committee, appointing Nicholas Carrigan chairman of the town committee, and member of the Democratic county committee from that town. In addition thereto is the affidavit of Carrigan that on the 28th day of September there was a meeting of such town committee; that all the members thereof were notified to be present; that, pursuant to the notice, three of them met; and that, at such time and place, Carrigan was elected chairman and member of the county committee. On the other hand, a paper was produced, dated October 2d, signed by four members of the town committee, in which they certify that they elected and constituted Henry Molineaux as their representative in the county committee, and declared that they had not designated any other person; and there is a further certificate, signed by three members of the committee, reading as follows:

"At the meeting of the town committee of the town of Newport, Herkimer county, N. Y., held on the 3d day of October, 1893, at the Hotel ———, we hereby represent and declare Henry Molineaux to be the duly elected Democratic chairman of the town of Newport, Herkimer Co., and our representative in the county committee." .

This is signed by three members of the town committee, one of whom was one of the three persons who signed the certificate for the appointment of Carrigan. This last certificate is sworn to before a notary public. While it does not appear in the papers submitted to me, it was stated upon the argument—and the last

certificate set forth seems to substantiate it—that after the first meeting was held, as alleged by Carrigan, members of the town committee to the number of four, without holding any meeting, separately signed the paper appointing Molineaux county committeeman, and subsequently three of them held a meeting in which they ratified the action theretofore separately taken, as set forth in the certificate of the meeting held October 3d.    It does not appear that notice was given of this meeting to the other members of the town committee.    It is not denied but that a meeting of this committee was called for September 28th, that notice was given to the members of the committee of such proposed meeting, and that three of them attended such meeting; and it is not denied but that, at such meeting, Carrigan was elected chairman of the town committee, except the unverified statements in the paper dated October 2d, and signed by four members of the town committee, in which they designate Molineaux as the "member of the committee, and our representative upon the county committee; and we hereby declare that we have not designated any other person to so act." If the meeting of the town committee was held as stated, and Carrigan was elected chairman thereof, (which is not disputed by the evidence,) then I think they had exhausted their power in that respect, and could not subsequently elect another in his place. The substance of the whole matter seems to be this:    That after Carrigan was elected by three members of the committee, two staying away, one of the members so voting for him was induced to change, and subsequently meet with the other two members, and join in the election of another person.    There seem to have been no rules governing the action of this town committee, and, in the absence of any, it must be held to the same rules that at common law govern any board or body of officers,—that the act of the majority is the act of the board or committee; that such act must be done, however, where all are together, or have had notice to be present. They have no power to act except in session; that is, they cannot act separately without any meeting being held.    19 Amer. & Eng. Enc. Law, p. 465 et seq.    The first meeting of the committee, all of its members having been notified, was regular, and their action in electing Carrigan was final.    It could not be revoked at another meeting.    And no other regular meeting of the committee was held; no notice of any other meeting was given.    Notice of any meeting should be given to all members, and, unless it is, it is not a legal meeting.    Carrigan was the only person ever elected at a legal meeting of the town committee.

In the town of Ohio there was no contest; there was no question raised as to who was the regularly elected county committeeman from that town.    The regularly elected delegate gave his substitute or proxy to one Edmund Comstock on the 2d day of October, and on the 3d day of October he gave a proxy or substitute to Ezra Beckwith to act for him at the meeting of the county committee. Ezra Beckwith was not a resident of the town of Ohio, and the contention is that he, not being a resident of the town of Ohio, had no right to act as a proxy for the committeeman of that town.    The

petitioners claim that there is a rule of the committee that no one except a resident of the town can act as the proxy or substitute of the committeeman from that town. This is denied by the defendants. As before stated, there are no written or printed rules, and each party produces affidavits to sustain their contention. It is not necessary, for the purpose of this proceeding, that that question should be determined; neither do I see that any useful purpose can be subserved by so doing; and it is, therefore, not passed upon. The Herlehey committee admitted to their body the persons that the foregoing discussion indicates should have been admitted, making their body consist of 11 regularly elected members out of 19, exclusive of the delegate from the town of Ohio, giving them a clear majority of the entire committee. My conclusion is, therefore, that the Herlehey committee was the regular committee, and the only one authorized to call conventions for its party, and that the decision of the county clerk should be sustained.