### In the Matter of JOHN J. MITCHELL.

*Election Law — proceedings under section 65 of chapter 680 of 1892 — when reviewable by the General Term — publication of notice of primaries — duty of county clerks in the preparation of ballots.*

An application for an order under section 65 of chapter 680 of the Laws of 1892, overruling the decision of the officer with whom the certificate of nomination of a candidate is filed as to the validity thereof, is a special proceeding as defined by the Code of Civil Procedure, and the General Term may entertain an appeal from an order affirming or overruling the determination of such officer, when the appeal can be heard and determined in due season.

Where there are two factions of a political party in a village having more than 5,000 inhabitants, and the only daily newspaper published in such village, although belonging to such political party, is opposed to one of the two factions thereof, and the weekly newspapers are all of a different political faith, a notice of the primaries to be held for the faction opposed by such newspapers need not be published therein, but in such case notice of such primaries should be posted in the manner prescribed by section 51 of chapter 680 of the Laws of 1892, when there is no newspaper in which such notices can be published.

In making up the various political ballots under the provisions of chapter 680 of the Laws of 1892, a county clerk should take into consideration the nominations for State and district offices, which have been certified to by the Secretary of State, and the nominations for local offices which appear upon certificates filed in his own office. In combining the names to go upon a particular ballot, he should select, so far as the party nominations are concerned, the candidates nominated by one and the same party, and when there are two sets of nominations of the same political party so far as local offices are concerned, both coming from rival organizations, which claim to be parts of the same political party, the county clerk cannot refuse to place one of such sets of nominations on a ballot with the State nominees of such party simply because the faction which made the nomination was not recognized by the last State convention of such political party.

His duty is to inquire and determine as a matter of fact whether the faction is really a part of such party or not, and if it is a part of such party its local candidates should be named on the ballot with the nominations for State offices made by such party, and, if not, they should have a ballot by themselves with blanks so far as relates to nominations for State offices.

Inasmuch as the original Ballot Reform Law (Chap. 262 of the Laws of 1890) is entitled "An act to promote the independence of voters," chapter 680 of the Laws of 1892, which is based thereon, should be interpreted, so far as possible, in accordance with the purpose thus indicated.

APPEAL by John J. Mitchell, candidate for sheriff, from an order of the Supreme Court, made at the Queens County Special Term on

the 24th day of October, 1894, and entered in the office of the clerk of the county of Queens, directing the county clerk of Queens county to print certain official ballots for the "Regular Democratic Party" of Queens county, otherwise known as the Gleason faction.

*William E. Stewart*, for John J. Mitchell, appellant.

*George Wallace*, for the Republican County Committee, against the order of the Special Term.

*George W. Stephens*, for the Regular Democratic Party of Queens county, otherwise known as the Gleason faction, respondent.

WILLARD BARTLETT, J.:

The Election Law of this State provides that a certificate of nomination, which apparently conforms to the third article of that statute, shall be valid, unless written objection is filed within three days after the filing of the certificate. The officer with whom the certificate is filed passes upon the validity of any objection which is duly interposed, and his decision is declared to be final "unless an order shall be made in the matter by a court of competent jurisdiction, or by a justice of the Supreme Court, on or before the Wednesday preceding the election." (Laws of 1892, chap. 680, § 65.)

The case before us is an appeal from an order made under this provision of the Election Law, at a Special Term of the Supreme Court in Queens county, held by Mr. Justice CULLEN on the 24th day of October, 1894.

In *The Matter of Woodworth* (64 Hun, 522) the General Term of the Fifth Department expressed the opinion that such an order was not appealable. One of the reasons given for this conclusion is, that the time when the questions may be investigated and decided is brief, and the proceedings must necessarily be summary. There, however, the appeal did not come before the General Term until after the election, when the reversal or affirmance of the order appealed from could have had no effect. Here the present appeal has been heard before the election to which the order relates, so that whatever action the General Term takes, if it has jurisdiction, can be made effective. It seems to me that the matter comes within the category of special proceedings as defined in the Code, and, hence, that the General Term may entertain an appeal from an order made

at Special Term therein, when the appeal can be heard and determined in due season, as in the case at bar. (Code Civ. Proc. § 1356.)

The question which we are called upon to decide relates solely to what are known as party nominations under the Election Law ; that is to say, nominations made by a primary or convention, or by a duly authorized committee appointed by such primary or convention. It has nothing to do with independent nominations, which are made by certificates signed and acknowledged by a prescribed number of voters.

The appeal was brought on in so informal a manner that the record was incomplete, inasmuch as it did not contain the testimony taken at Special Term. This, however, has been furnished to us by the official stenographer.

The proceedings in the court below, including these proofs, show that there is now and has been for many years in Queens county, a faction of the Democratic party which is known as the Gleason faction. This year the delegates of this faction were not admitted to the Democratic State convention. In some years, however, they have been admitted, but whether recognized by the State convention or not, it appears that the Gleason faction have always supported the Democratic State and National ticket. Their contest with the other Democratic organization in Queens county has related only to local officers, and in respect to some of these they have more than once been successful, notably in Long Island City, thus indicating that they comprise a substantial body of voters.

A certificate has been filed with the county clerk in behalf of this faction, making nominations for county clerk, sheriff, superintendent of the poor, three coroners, justice of sessions and member of Assembly for the third Assembly district. The Gleason faction call themselves the Regular Democratic party, and these nominations purport to be made by "the duly authorized committee appointed by a convention of delegates representing the Regular Democratic party held September 22, 1894, in and for the county of Queens."

John J. Mitchell, who is the candidate for sheriff of the Democratic organization opposed to the Gleason faction, duly filed objection to the validity of their certificate, and contends, *First*, that they are not entitled to have any official ballot at all printed, inasmuch as

they did not comply with the laws in respect to holding their primaries and convention; and, *secondly,* that in any event they are not entitled to have the names of their candidates for local offices placed on the same ballot with the names of the Democratic candidates for State offices, but that so far as the latter are concerned their ballot should be left blank.

As to the first point, the record does not sustain the objection that insufficient notice was given of the holding of the primaries of the Gleason faction. In a city or village having more than 5,000 inhabitants notice of a primary must be given in a daily newspaper published there "of the same politics with the party giving the notice." (Election Law [Chap. 680 of 1892], § 51.)

There are more than 5,000 inhabitants in Long Island City, but the only daily newspaper there is found by the court below to be opposed to the Gleason faction. Under these circumstances, I do not think it was a paper in which the law required the notice to be given, though it is also declared in the findings to be independent Democratic in politics. The obvious purpose of the statute is to provide for the publication of the notice where persons desiring to attend the primaries would be likely to see it, and such persons would be hardly likely to see it in a journal hostile to their organization. The Election Law goes on to provide that "if no such newspaper is published in the same city or village where such primary is to be held, such notice shall be posted in at least six public places in such city or village at least two days next preceding such primary, and published in a weekly newspaper, if any, in such city or village of the same politics as the party giving the notice, before such primary is held." The prescribed notice was posted in Long Island City in six or more public places and in the town of Flushing, and the proof is that the weekly papers published in Long Island City are all Republican. The provisions of law, therefore, in regard to giving notice of primaries in cities and villages having more than 5,000 inhabitants seem to have been complied with, and, except in such cities and villages, a primary may be called and held pursuant to notice given according to the regulations and usages of the party organization holding it. (Election Law, § 51, last clause.)

These views lead to the conclusion that the Gleason faction are

entitled to have their nominations for local offices printed upon an official ballot, and bring us to the second question in the case : Is that official ballot to bear only those nominations for local offices and to be otherwise blank, or may it also bear the Democratic nominations for State offices ?

This question is different from that which came before me in 1890, in the case of *The People ex rel. Childs* v. *Sutphin* (not reported). That was an application for a peremptory writ of mandamus to compel the county clerk of Queens county to strike the name of James W. Covert as a candidate for Congress from the official ballot containing the nominations for county offices made by this same Gleason faction. There it appeared that the Gleason faction had been recognized by the last preceding State convention and had been accorded equal representation with the delegates of the rival Democratic organization from Queens county. Each faction held a county convention and nominated county officers. When these two sets of county nominations came before the county clerk, he was unable to determine that one was any more or less Democratic than the other, and so he printed one ballot bearing the names of the county candidates of the Gleason faction, together with the name of James W. Covert as candidate for Representative in Congress and Robert Earl as candidate for Judge of the Court of Appeals, and another ballot bearing the names of the county candidates of the other Democratic faction, together with the names of the same candidates for Congressman and Judge. Each county convention being apparently just as regular as the other, so far as the clerk could tell, it was held that he might lawfully place the names of Mr. Covert and Judge Earl upon one official ballot containing the county nominations made by one of the Democratic county conventions, and also upon another official ballot containing the county nominations made by the other Democratic county convention. It was impossible, on the facts then before the court, to say that one convention was not as much in harmony with the State Democratic organization as the other. Here the facts are quite different. The Gleason faction have been refused recognition by the State convention, and if such recognition is necessary to enable them to have their local ticket placed on the same ballot as the State ticket, they must fail on this appeal.

Only four reported cases have been brought to our attention, arising under section 65 of the present Election Law, or the corresponding provision in the original Ballot Reform Act (Laws of 1890, chap. 262, § 13). These manifest a decided difference of judicial opinion at Special Term in regard to the effect which ought to be given to recognition or non-recognition by a State convention. *The Matter of Woodworth* (16 N. Y. Supp. 147) involved a controversy between two opposing Republican factions in Seneca county. Mr. Justice ADAMS, finding both certificates in apparent conformity with the law, inquired into the extraneous facts and ordered the clerk to print upon the official ballot the names of the county candidates nominated by the faction which he found to be regular. The case went to the General Term, where, as already stated, the court held that the order was not appealable. (64 Hun, 522.) In *The Matter of Redmond* (5 Misc. Rep. 369) the same learned judge was called upon to determine whether the nominee of an Assembly convention called and held by a faction whose delegates had been refused admission to the Democratic State convention was entitled to have his name printed on the official Democratic ballot. He decided that " the applicant having received his nomination at the hands of a convention whose claims to regularity have been submitted to the supreme authority within the party in the State, and which have by that party been declared unfounded, cannot be regarded as a regular nominee of his party, and is consequently not entitled to have his name printed upon the official Democratic ballot." Judge ADAMS again considered a like question in *The Matter of Pollard* (55 N. Y. St. Repr. 155) and expressed the opinion that " the only rule for courts and judges to adopt in this and all other similar contests is that they will interfere only in cases where there has been no adjudication of the question of regularity by some division of the party which is conceded to be superior in point of authority to the one in which the contention arose, provided, of course, that the question of good faith in the making of such adjudication is not involved."

On the other hand, in *The Matter of Broat* (6 Misc. Rep. 445) at the Albany Special Term in January, 1894, HERRICK, J., declined to give any force to the recognition of one of the rival organizations by the executive committee of the Democratic State committee, saying: " In proceedings of this character the decisions of party con-

ventions, committees or caucuses are not binding and have no weight with the court; one of the very purposes of the law is to determine whether the action of such bodies is in conformity with the laws of the State."

In examining the various Special Term decisions which have been rendered upon this branch of the Election Law, in order to ascertain what view is soundest in reason, we should not overlook the opinion delivered by Judge CULLEN himself two years ago in an unreported case in Queens county where the facts were not materially different from the facts in the case at bar. (*Matter of the Application of Jones* v. *Sutphin*, MSS. opinion.) The question was whether the names of the Democratic nominees for presidential electors should be placed on the ballots containing the names of the candidates for local offices nominated by the Gleason faction. The delegates of that faction had not been admitted to the most recent Democratic State convention. It was claimed that there could be but one organization of the same political party in a county; that the Gleason organization was not regular because it had not been recognized as such by the State convention; and that it was to be treated as a wholly distinct party, not entitled to have its local nominees named on a ballot with nominees for State offices, unless it held a State convention or nominated candidates for State offices by certificates as independents. This view was rejected, in reliance upon the principle involved in the decision of the General Term of the First Department, in the case of *The People ex rel. Van Wyck* v. *Wheeler* (18 Hun, 540), where the Tammany Hall organization was held to be entitled to representation in the appointment of Democratic election inspectors, notwithstanding the fact that Tammany Hall had withdrawn from the Democratic State convention and refused to support its candidate for Governor. In selecting the inspectors it was declared to be the duty of the police commissioners to look upon the Democratic party as a whole, and not exclude a great body of Democrats who, under one local organization, rejected the nominee for Governor, but supported all the other nominees on the State ticket. The wisdom of the rule thus laid down, said Mr. Justice CULLEN in the manuscript opinion to which I refer, has been made apparent by subsequent events. " Tammany Hall, in 1879 withdrawing from the State convention and not till 1882 suffered to

take part in its proceedings even on a partial representation, in 1889 was received as the only representative of the Democracy of the city of New York. Yet, with the exception of the election of 1879, it always supported the State Democratic ticket, polling therefor, generally, a greater vote than that of its rival organization, and defeating that organization in the contests for local offices. It would be absurd to deny that Tammany Hall, during the period of its exclusion from the State councils, was a part of the Democratic party of the State of New York. The Gleason party stands in the same position on State and National nominations. It is a part of the Democratic party."

If these views were correct in 1892, when they resulted in placing the Democratic Presidential electors on the same ballot as the Gleason nominees in Queens county, they are correct now, and should lead to an affirmance of the order directing the clerk to place the names of the Democratic nominees for State offices upon an official ballot bearing the names of the local candidates of the Gleason faction.

I think they were correct. In making up the various official ballots the county clerk takes into consideration the nominations for State and district offices which have been certified to the Secretary of State and the nominations for local offices which appear upon certificates filed in his own office. In combining the names to go upon a particular official ballot he is to select, so far as party nominations are concerned, the candidates nominated by one and the same party. Ordinarily there is no difficulty in doing this, for ordinarily there is only one set of nominations from the same party to deal with. But suppose there are two sets, as in the present case, so far as local offices are concerned, both coming from rival organizations which claim to be parts of the Democratic party. May the county clerk refuse to place one of these sets on a ballot with the State nominees simply because the faction which made the local nominations was not recognized by the last State convention? I think not. His duty is to inquire and determine, as matter of fact, whether that faction is really a part of the Democratic party of the State or not, in the wider and more liberal sense applied in the *Wheeler* case by the New York General Term. If it is, its local candidates should be named on a ballot with the Democratic State

ticket.   If it is not, they should have a ballot by themselves, with blanks so far as relates to State offices.

The determination, as a question of fact, whether a particular local party is to be deemed a portion of a larger political party or not may often involve perplexities, and it is impossible to lay down any specific rules in advance by which such questions may always be decided.   It seems perfectly clear to me, however, upon the proofs in the present case, that the court below was right in the conclusion reached as to the relation of the Gleason faction to the Democratic party of the State.

The present Election Law is not so plain in its provisions or so easy of interpretation as to permit any construction in respect to the points here involved which would not be open to some objection. I think that the construction which has been adopted really involves fewer substantial objections than any other which has been suggested.   To hold that a large body of Democrats or Republicans who were in sympathy with their party nominations for State offices could not have an official ballot bearing these nominations, simply because of factional differences in respect to local candidates which resulted in two local tickets, would be to restrict rather than facilitate independent voting.   The original Ballot Reform Law was entitled, " An act to promote the independence of voters," and the present Election Law, which is based upon it, should be interpreted, so far as possible, in accordance with the purpose thus indicated.

I think the order appealed from should be affirmed.

DYKMAN and PRATT, JJ., concurred.

Order appealed from affirmed.