In the Matter of the Application of John P. Madden, Appellant.— The Clerk of Queens County, Respondent.

Elections — Official Ballot — Names of Candidates. Under the Election Law as amended in 1895 (Chap. 810, Laws of 1895), a county clerk has no authority to insert and print in a party column on the official blanket ballot the names of any candidates other than those who have been duly nominated and certified by the party whose name and emblem head the column.

(Argued December 12, 1895; decided December 19, 1895.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, made December 2, 1895, which affirmed an order of Special Term denying a motion for a writ of peremptory mandamus.

The facts, so far as material, are stated in the opinion.

*Henry A. Monfort* for appellant. The court below erred in denying the appellant's motion to compel the clerk to comply with the mandate of the law. (Laws of 1895, chap. 810, §§ 56, 58, 60, 81; *Fernbacher* v. *Roosevelt*, 14 Misc. Rep. 199.)

*F. H. Van Vechten* for respondent. In exercising the right to regulate the exercise of the elective franchise, it is incum-

bent upon the legislature to use its power therein in such manner that the regulations it prescribes shall be reasonably uniform and impartial, and so that its enactment shall not directly or indirectly deny or abridge the constitutional right of citizens to vote, and shall not unnecessarily impede such exercise, and if any enactment by the legislature so does, such enactment must be declared by our courts null and void. (Cooley on Const. Lim. [6th ed.] 758; Const. N. Y. art. 1, § 1; *Taylor* v. *Porter*, 4 Hill, 140; *White* v. *White*, 5 Barb. 474; *People* v. *Toynbee*, 20 Barb. 198; *Silvey* v. *Lindsay*, 107 N. Y. 55–59; *In re Gage*, 141 N. Y. 112; *Capron* v. *Foster*, 12 Pick. 485; *Monroe* v. *Collins*, 17 Ohio St. 665; *Kinneen* v. *Wells*, 144 Mass. 500.) It is the inalienable right of every citizen of this state to freely exercise the right of suffrage and to demand the equal protection of the laws, and this right is guaranteed by the fourteenth amendment to the United States Constitution. (*Yick Wo* v. *Hopkins*, 118 U. S. 356; *Wally* v. *Kennedy*, 24 Am. Dec. 511; *People ex rel.* v. *Bull*, 46 N. Y. 57.) It is the absolute duty of the courts to exercise the power vested in them by the Constitution when called upon in proper form so to do. (*Alexander* v. *Bennett*, 60 N. Y. 204.) The appellant was not entitled to a mandamus and the order of the General Term should be affirmed. (Laws 1895, chap. 810, §§ 56, 80, 81, 104; Cooley on Const. Lim. [6th ed.] 760; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *People ex rel.* v. *Terry*, 108 N. Y. 1–7; *Smith* v. *People*, 47 N. Y. 330; *Roesenplaenter* v. *Roessle*, 54 N. Y. 262; Laws of 1890, chap. 263; *In re Mitchell*, 81 Hun, 407; *People* v. *Bd. of Canvassers*, 129 N. Y. 395; *Kirk* v. *Rhodes*, 48 Cal. 398; *Matter of Mitchell*, 81 Hun, 401; *People ex rel.* v. *Bell*, 119 N. Y. 178.)

ANDREWS, Ch. J. The question on the merits in this case relates to the duty of the county clerk of a county, under the Election Law, in making up and printing official ballots to be used at a general election. The facts upon which the question depends are not controverted. For several years prior to

1895 a party known as "the Regular Democratic Party of Queens County" had nominated and supported at the polls candidates for county and local offices other than those ' nominated by the Democratic party, with which in all other respects it was in affiliation.    Its members were Democrats in principle, and supported the regular nominees of the Democratic party, except for local offices.    It was a faction of the Democratic party.    Its representatives were excluded from the state convention of that party held in the fall of 1895.    In the fall of that year it made nominations for county and local officers, which were duly certified.    It made no nominations for state officers or for justices of the Supreme Court.    It could not nominate state officers, for the reason that it had not polled at the last preceding general election the requisite number of votes in the state to entitle it, under section 56 of the Election Law, as amended in 1895, to make a party nomination.    It was entitled to make a nomination for local officers, because it had, at the prior general election, polled more than one per cent of the votes cast in the county.    The county clerk, prior to the election in 1895, acting upon the advice of counsel, had decided, in printing the official ballot for the November election, to insert a column under the party name and emblem (a battle axe) of "the Regular Democratic Party of Queens County," and to print therein not only the names of the candidates of that party for local offices who had been duly nominated and certified, but also the names of the candidates of the Democratic party for state and judicial offices, nominated by that party, but for which offices the "Regular Democratic Party" had made no nominations. The proposed action of the county clerk was made the subject of protest, and the relator, a voter in the county and a candidate of the Democratic party for the office of mayor of Long Island City, in October, 1895, obtained from the court at Special Term an order to show cause why a mandamus should not issue, directing the county clerk to omit from the list or ticket of "the Regular Democratic Party" upon the official ballot, the names of the nominees of the Democratic

party for state and judicial offices.   The courts below denied relief and the relator comes here, maintaining the contention that no names can be legally printed on an official ballot under a party name and emblem, other than those of candidates who have been duly nominated and certified by such party for the offices designated.

The election having been held, the decision of the question is of no practical importance in the particular case.   But the courts in the first and second departments have reached opposite conclusions upon the question, and a final decision seems to be required to prevent embarrassment in the future from conflicting judicial decisions.

The most radical change in the ballot system made by recent legislation consists in the substitution of an official ballot for the ballots formerly printed and furnished by political parties or individuals.   By the new system the state undertakes to print and furnish ballots for the use of electors, uniform in appearance, containing the names of candidates of political parties or nominating bodies, for the offices to be filled at elections.   The legislature in framing the system was bound to recognize the freedom of choice which is of the essence of popular elections.   It could not itself designate the candidates to be voted for, or limit the right of any elector to vote for any person he might choose.   The point to be solved was, how an official ballot could be made, which the voter was required to use, consistently with the fundamental principle of a free election.   The legislature, in working out the system, availed itself of the common knowledge that in this country nominations for office are usually made through party organizations.   By bringing candidates so nominated together upon a printed ballot, ranging them under the party name of the party by which they were nominated, the voter would in a large majority of instances be able to select the candidates of his choice.   The legislature was able, through the system of party and independent nominations and a blank column, to carry out the project of an official ballot.   It provided a method by which party nominations could be made known to

the voters and to the public officials intrusted with the duty
of preparing the official ballot. That method, stating it in
general terms, was to require nominations by a political party
for state officers or for officers for districts larger than a
county, to be authenticated or certified by the nominating
body to the secretary of state, and to the county clerks of the
respective counties in case of county or local nominations
(Laws of 1895, chap. 810, sec. 56) and to insert the names of
persons so nominated in the official ballot under a party name
and emblem.   The legislature also authorized what are called
in the statute independent nominations, to be made by a cer-
tificate signed and sworn to by a specified number of voters,
the number required varying according to the character and
locality of the offices to be filled. (Sec. 87.)   The contents
of the official ballot, according to the scheme adopted, are
determined by the certificates of nomination.   Under the
Election Law of 1892, separate ballots were required to be fur-
nished of the nominations of each party as certified.   Under
the amendment of 1895, the blanket ballot was adopted as the
form of the official ballot.   The device of a party emblem to
be placed at the head of each party ticket or independent
nomination, together with the party designation, were pro-
vided for by the act, and in case of what are called party
nominations, the nominees of each party are required to be
printed in a separate column under the party name and
emblem.   They are, the statute declares, to be "arranged
in tickets or lists under the respective party or politi-
cal or other designation certified." (Sec. 81.)   The right
to a column depends upon a nomination having been
made and certified.   The duty of providing the official
ballots for general elections is cast upon the county clerks
of the respective counties, with certain exceptions not
now necessary to be stated. (Sec. 86.)   He can only know
officially, from the certificates sent to him by the secretary of
state or those deposited with him, who have been duly nomi-
nated, and by what party or parties nominations have been
made.   I find in the act of 1895 no authority conferred on the

county clerk to insert any names in the printed list of candidates of any party except those whose nominations have been duly certified in accordance with the act.   In the present case, the county clerk may have known from rumor or other unofficial sources that the " Regular Democratic Party of Queens County" only differed from the Democratic party on local nominations, and that its members intended to support the state and judicial nominees of that party.   They could do this, however, by marking the names of such nominees in the Democratic column with a cross when they came to prepare their ballots.   But I conceive that the certificates of nomination were the only guide which the clerk was authorized to follow in making up the lists, and that he could not insert in the column of " the Regular Democratic Party " any names whose nominations were not certified in its party certificate.   It might result in great inconvenience if a local party, by virtue of a local nomination, could insist upon having a full party ticket printed in a separate column with its local nominees, although only a local nomination had been made or certified. The distinct emblems required might, under that practice, easily become sources of confusion and instruments of deception.   The statute does not permit a voter to write in the blank column of the ballot the name of a person for whom he desires to vote if his name is printed in any of the lists in connection with the same office.   (Sec. 81.)   It could not, I think, have been the intention of the legislature that any candidate's name could appear in the official ballot save under the name and emblem of the party or nominating body by whom he was put in nomination, for, otherwise, the use of the party names and emblems, so carefully provided for in the act, would become comparatively unimportant.   The purpose of an emblem is to " designate and distinguish all the candidates of the same political party or independent body."   (Sec. 56.)   The same section declares that if any political party or independent body makes no nomination for a state office, but shall nominate for an office to be filled by the voters of a district of the state, an emblem shall be selected to " designate and distinguish the candidates

of that political party or independent body *who are named in such certificate.*" The provisions of section 81 have been alluded to. I am of the opinion that the clerk in printing in the column of the "Regular Democratic Party of Queens County" the names of the candidates for state and judicial offices of the Democratic party transcended his authority, and that the courts below erred in their decision on the merits. I do not refer to the questions of procedure, since neither party has argued any question except the one above considered.

The order should be reversed, but without costs to either party.

All concur.

Order reversed.