(9 App. Div. 237.)

## In re EMMETT.[1]

(Supreme Court, Appellate Division, Second Department.    October 26, 1896.)

ELECTIONS—FILING CERTIFICATE OF NOMINATION—DETERMINATION AS TO VALIDITY—REVIEW—LIMITATION.

Laws 1896, c. 909 (Election Law) § 56, giving "the supreme court or any justice thereof" summary jurisdiction to review a determination as to the validity of a certificate of nomination by the officer with whom the certificate is required to be filed, and make such order as justice may require, "but such order must be made on or before the last day fixed for filing certificates of nomination," limits the time within which the appellate division of the supreme court may make an effective review of such an order by a justice thereof, as well as the time within which he may make the order. Hatch, J., dissenting.

Appeal from special term.

Richard S. Emmett, Jr., and Joseph E. Ennis presented to the county clerk of Westchester county certificates of nomination for member of the assembly for the Second district of Westchester county, each claiming to be the regular nominee of the Republican party. The determination of the clerk in favor of Emmett was, on application of Ennis, reversed by a justice of the supreme court, who ordered the name of Ennis to be put on the official ballot as the Republican nominee, and from such order Emmett appeals.    Dismissed.

Argued before BROWN, P. J., and BARTLETT, CULLEN, HATCH, and BRADLEY, JJ.

1 Reversed by the court of appeals. See 44 N. E. 1102.

James M. Hunt and Roger M. Sherman, for appellant.
H. O. Henderson, for respondent.

BROWN, P. J. In this case, which is entitled, "In the Matter of the Objections to the Certificate of Nomination for Member of Assembly of the Second Assembly District of Westchester County," the court is of the opinion that it can make no effective order in the case. The statute of 1895 provided that the court could "make such order in the premises as justice may require." Laws 1895, c. 810, § 56. By the amendment made to the law in 1896 it was further provided that "such order must be made on or before the last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in sub-division one, of section sixty-six of this article." Laws 1896, c. 909, § 56. That subdivision requires that the certificate of nomination for member of assembly shall be filed with the clerk 15 days before the election, so that, in compliance with that provision of the statute, it is impossible for the court to make any order that would be effective in this matter. The case from the Fourth department, to which our attention was called, was decided under the act of 1895, and has no application to this case. Therefore the appeal that is taken is dismissed. That is the view of three judges of the court. Judge HATCH has dissented from that view, and he has expressed the views that he has taken in a written opinion, which will be filed with the clerk.

HATCH, J. (dissenting). The order appealed from was made by the court below on the 17th day of October, 1896. The direction, by the learned judge who granted it, was in the following words: "The county clerk of Westchester county is directed to file the foregoing order immediately upon the presentation thereof to him." In the usual course of judicial procedure, the party obtaining an order favorable to his contention enters the same, and the party affected thereby may usually rely upon his so doing. The case presented necessity for expedition, as the time in which the rights of the parties could be determined, if it was sought to review the order by appeal, was extremely short. Appellant appealed from the order to this court upon the day (Saturday) on which the order was made, and promptly appeared in court to argue and submit the appeal at its opening on Monday, October 19th, that day being the first day of the session of the court following the making of the order. He was met by the objection that no order had been entered by the clerk, and that, consequently, there was nothing before the court for review. This objection prevailed, and the court declined to entertain the appeal for that reason. After this dismissal, but upon the same day, the order was entered, and appellant immediately took this appeal, and has brought the matter again to the attention of the court as soon as judicial machinery permitted. No excuse or reason is assigned why the order was not promptly entered by respondent, and none suggests itself to the court, except that delay might allow the election statute to operate and prevent a review of the order. Such practice does not commend itself to the court; nor does it consort with fairness and justice. The

court should not lend aid to its success, unless compelled thereto by an unyielding statute.

It is desired, before considering the question of power in the court to now make an effective order, to look somewhat at the merits of the application which is now before us. It appears without dispute that the representation to the Second assembly district of Westchester county is made up of 71 delegates from the various towns and districts in such assembly district; that of this number Richard S. Emmett, Jr., received 48 votes, being a majority of the whole number of elected delegates at a convention claiming to be the regular Republican assembly convention, called by the regular machinery of the party in that district, which met at New Rochelle October 7, 1896. The primaries which elected these delegates were conceded to be regular, and there were no contests in any of the towns comprising the district, except in the town of Harrison, to which was accredited five delegates. Joseph E. Ennis, whose name is directed to be placed upon the official ballot, claims to be the regular nominated member of assembly from said district. He was nominated by a convention claiming to be the regular Republican assembly district convention, called by the regular party machinery of the district, and held at White Plains, in said district, on the 6th day of October, 1896. It nowhere appears in the record before us how many delegates attended the convention. It was stated by counsel upon the argument, and not controverted, that but 23 delegates were present. We have, therefore, the fact that the delegates who represented the district which made these two nominations were the regularly accredited delegates of the whole body of Republicans composing the district. Had they all met at one time, and in one convention, the votes which were given for Emmett would have constituted him the party nominee for this office. Meeting separately, he still has a substantial majority,—nearly two-thirds of all the delegates. Unless, therefore, some insuperable obstacle stands in the way, he ought, in good conscience and equity, to receive the benefit which almost uniformly follows the majority vote. The court below, in disposing of the present question, made the right to a place upon the official ballot to depend upon the regularity of the call of the nominating convention by the constituted authorities, and, so far as appears, did not consider the fact that Emmett had received nearly two-thirds of the votes of the accredited delegates. It appears by the record that on August 3, 1896, in pursuance of a regular call, there met at Tarrytown, in said county, an assembly district convention for the purpose of selecting delegates to attend the state, judicial, and congressional conventions of the Republican party thereafter to be held, and to perform such other duties as should properly come before it. The assembly district committee, who issued the call, as there were several contesting delegates, met for the purpose of making up a temporary roll of delegates for the organization of the convention. The call for the convention required it to meet at 12 m. At that hour the committee had not finished its labors, but the delegates had assembled at the hall. How many, does not appear. Upon motion of one of the regularly elected delegates, one John J. Mahaney was elected chairman of the convention, and possessed him-

self of the platform.   At about this time, and at 12 minutes past 12 o'clock, the committee, having finished its labors, headed by its chairman, Jacob Halstead, entered the convention hall, and demanded right to call the convention to order.   His demand was refused, and Mahaney insisting upon acting as chairman of the convention and proceeding with the organization, the committee withdrew from the hall, and, proceeding to another room in the same building, organized a convention.   It was stated by the learned court below that the delegates who remained in the hall constituted a majority of the delegates. In fact, both conventions claimed to have a majority of the delegates, and the fact doubtless depended upon the determination of the claims of the contesting delegates.   Whether the usual course in Westchester county devolved upon the committee designated to call the roll of the convention the duty of preparing a temporary roll of the delegates, in case of contest, and for the chairman of the committee to call the convention to order, or whether the delegates themselves proceeded to organize the convention, is a disputed question, upon the record before us.   There must rest somewhere some power to determine who are delegates entitled to participate in the temporary organization of the convention.   It is the established custom in the national convention of the Republican party for the national committee to make up the temporary roll; for its chairman to call the convention to order, and present the temporary presiding officer for acceptance by the convention as thus made up.   That such rule is observed in other jurisdictions of the Republican party in this state, appellant's affidavits tend to establish, and the necessity for it in case of contesting delegations, for purposes of temporary organization, is apparent; for until that question be settled both sets of delegates have prima facie the right to participate, which may operate to the disadvantage of the rightful delegates, and gives undue representation, to the disadvantage of delegates from other localities. The right to determine preliminarily this question would seem to rest with the committee authorized to call the convention.   Undoubtedly the convention has the right to organize itself in the absence of the chairman of the committee, assuming that he possessed the power to call it to order.   But when the committee were engaged in the discharge of their duties, and were actually present near the hall, which it may be safely presumed was known to the delegates, a reasonable time ought to have been allowed for the committee's appearance, and I think we may safely assume that 12 minutes was not an unreasonable time to wait.

Assuming, however, that the question of regularity of the two conventions remains a question of doubt, upon the record, we may well rely upon the action of the constituted authorities, which had the power of review and determination of the question of regularity. It appears that each of the two conventions elected delegates to the state, judicial, and congressional conventions, respectively, of the Republican party, and also appointed committees to call the assembly district convention for the purpose of nominating a member of assembly.   The delegates elected by the Halstead convention were admitted by the respective conventions to which they were sent,

and the delegates from the Mahaney convention were rejected after their claims had been heard. The question of the effect of party action by the supreme authority in the state upon the regularity of conventions and their action has not been viewed alike by judicial tribunals. Mr. Justice Adams, in Re Woodworth (Sup.) 16 N. Y. Supp. 147, held that the court would examine the evidence and determine for itself the regularity of selection and action by the delegates in convention. Upon reflection the learned judge modified his views somewhat, and held that, where there had been action upon the regularity of the convention by superior authority in party regulation, such action is to be regarded as binding upon the courts. In re Redmond, 5 Misc. Rep. 369, 25 N. Y. Supp. 381. The Woodworth Case was affirmed upon appeal (19 N. Y. Supp. 525), upon the ground that the order was not appealable, but there was no discussion of the rule which governed the action of the court in the Redmond Case. And the learned judge again adopted the same rule in Re Pollard (Sup.) 25 N. Y. Supp. 385. In Re Broat, 6 Misc. Rep. 445, 27 N. Y. Supp. 176, Mr. Justice Herrick held that the determination of party conventions and committees had no weight whatever in determining whether the action of these bodies was in conformity with the laws of the state. In Re Mitchell, 81 Hun, 401, 30 N. Y. Supp. 962, this question was quite elaboratey considered; and this court held that courts would inquire into the action of political conventions, irrespective of the determination by superior party authority. I conceive the rule of this case to be that so far as the action of caucuses and conventions is concerned, which are regulated by law, it is the duty of courts to see that the law has been complied with, and will make inquiry to that end. But so far as party usage and custom is concerned, which does not find regulation by statutory authority, and is not governed by some fixed and definite rule for party action, the action of the supreme authority in the party would have great, if not controlling, weight. So far as applicable here, it does not appear that there exists any settled, definite rule governing the question as to who should make up the roll of delegates for temporary organization, or who was the proper person to call the Tarrytown convention to order; and it may well be that, under such circumstances, we ought to regard the action of the convention in receiving the delegates of the Halstead convention as final, and that, therefore, the committee which was appointed by such convention had authority to call the assembly district convention which nominated Emmett. But, aside from this, we have the fact that the delegates, who certainly had authority to act, have acted, and have, by nearly a two-thirds vote, named a candidate. The order of the court below deprives him of the rights secured thereby, and makes party regularity superior to the act of accredited delegates. It gives effect to the shadow, and not to the substance. It makes the order of the court superior to the concededly expressed will of the people by their delegated authority. And it absolutely, for all practical purposes, prevents the voters from casting their votes for the nominee thus named. Not alone does this result, but by act of the respondent, in failing to enter the

order, the aggrieved party was denied his remedy.   Are we now powerless to right this wrong and prevent this injustice?   It is said that we are.

Claim is first made that the order is not appealable.   The court so said in the Woodworth Case, supra.   But it was there said, not so much in denial of the right, as for the reason that any order which the court might make would be futile.   In the Mitchell Case, supra, the court held the order appealable, where there remained time in which relief might be granted.   In Re Cuddeback, 3 App. Div. 103, 39 N. Y. Supp. 388, the court, upon appeal from an order which reversed the action of the county clerk in refusing to file a certificate of nomination not presented within the statutory time, entertained the same, and reversed the order of the court, and affirmed the decision of the county clerk, although the time. within which the order could be made effective had expired.   The proceeding in this case still remains an appeal from an order, notwithstanding the assertion by the respondent's counsel that it was a proceeding by mandamus.   The rule seems to be that the order is appealable, and will be entertained when it can be made effective, or where the determination involves a question of public importance, or where there exist conflicting decisions of the lower courts.   In re Madden, 148 N. Y. 136, 42 N. E. 534.

It is said that any order which we may make cannot be rendered effective.   If this be so, then we ought not to make any that interferes with the ballot.   The election law contemplates that a ballot may be changed by order of the court at any time before election, if such course be necessary to correct any error or omission therein.   Laws 1896, c. 909 (Election Law) § 88.   In fact, there still remains time in which any order we may make in this matter can be rendered effective.   Excluding the day of our decision and election day, there remain seven full days.   The first official act which the clerk is required to perform, following the last day of filing certificates, is provided by section 61 of the election law, when he must publish a list of the candidates.   This would happen on the day following our decision.   He is also required upon the same day to forward to certain officers printed lists of the candidates, and the same are to be posted three days before the election.   Aside from this, the clerk is required to do no act before this time, beyond the preparation of the ballots, and they are not to be delivered until Saturday before election.   Id. § 87.   It is therefore apparent that, so far as the election law prescribes duties to be performed by the clerk, our order would not have the effect of interfering with the duties charged upon him.

It is further urged that section 56 of the election law is mandatory, in that the order contemplated by the section requires that it should be made on or before the last day for filing certificates with the county clerk, which must be at least 15 days before the election.   The language of the section as it stood in 1895 authorized the court "to make such order in the premises as justice may require."   The amendment to this section in 1896 (1 Gen. Laws 1896, p. 925) added to this language the words, "but such order must be made on or before the

last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in sub-division one of section sixty-six of this article." This language, literally construed, does not embrace the order to be made by this court. The order was made by the court below upon application of the respondent, and was so made within the time prescribed by the statute. It is that order which is now appealed from, and which we have authority to review. Concededly, the established rule in the construction of statutes is that the intent of the lawmakers shall govern. But as was said by Judge Earl in People v. Commissioners of Taxes of New York City, 95 N. Y. 554:

"Whenever it happens that the sense of the law, how clear soever it may appear in the words, would lead to false consequences and unjust decisions, the palpable injustice which would follow from its sense compels an effort to discover some kind of interpretation,—not what the law literally says, but what it means."

So, when the literal language of the act does not place a prohibition upon the act which it is sought to have done, courts are not bound to search for an intent, outside of the literal language of the statute, which would lead to a result palpably unjust. A construction which leads to an absurd result will always be avoided. Com. v. Kimball, 24 Pick. 370. And one which leads to the perpetration of a wrong ought to be avoided when possible. Usually, when an act requires a thing to be done in a particular way that manner alone must be followed. But such questions are largely governed by considerations of convenience and justice, and when the particular manner of doing the act involves "injustice to innocent persons, or advantage to those guilty of the neglect, without promoting the real aim and object of the enactment, such an intention is not to be attributed to the legislature." End. Interp. St. § 433. In the determination of the question whether a statute is mandatory or directory, a general rule is not easily formulated, as the question must depend upon many particular considerations. But generally, when the limitation is not placed upon the jurisdiction and power itself, but only upon the manner and time of its exercise, it may be, and has been, construed to be directory. Black, Interp. Laws, § 124, p. 338; Bladen v. Philadelphia, 60 Pa. St. 464. It is also laid down as a rule of construction that, where the provisions of the law which have been disregarded form important parts of a complicated system, it is of importance to examine the other parts, in order to determine what effect the failure to comply will have upon the associated parts of the act. Black, Interp. Laws, § 123, p. 335. Applying these rules to the particular case now in hand, we have no difficulty in seeing that the construction which prevents a review of this order leads to the perpetration of injustice upon the appellant, and practically defeats the right of a large class of voters. There is no limitation placed upon our power to review this order and render a decision thereon, as there is no prohibition in the statute itself. The whole theory of the election law seeks to formulate a plan by which the free, fair, and independent desire of the elector may find expression. The fact that some of its provisions seem destructive of this end does not militate

against this theory. This relates, not alone to the casting of the vote, but to all the steps which are provided for placing the candidates upon the ticket. The preservation of the latter right is as important as is the preservation of the right to vote, and to have the vote made effective. In People v. Wood, 148 N. Y. 147, 42 N. E. 537, the court said:

"The object of election laws is to secure the rights of duly-qualified electors, and not defeat them. Statutory regulations are enacted to secure freedom of choice, and to prevent fraud, and not by technical obstruction to make the right of voting insecure and difficult."

Among the rights of duly-qualified electors is the right to vote for a candidate who has been selected by their accredited delegates, and, when this privilege is denied to them, their right thereto is defeated. The denial to Emmett of a place upon the ticket is a denial, not alone of a clear right possessed by him, but is, for all practical purposes, a denial of the right of the electors to vote for him. This right has been denied by the interposition of technical objections, and by sharp practice in withholding from entry the order made by the court below. It should not be allowed to prevail, as the court can now make its order effective, and the statute admits of a construction which does not prohibit this order. In the interests of justice and right, the appellant should prevail.

The order appealed from should be reversed, and the decision of the county clerk affirmed, and the latter should be directed to place the name of Richard S. Emmett, Jr., upon the official ballot.