NATHAN FERNBACHER, Respondent, *v.* THEODORE ROOSEVELT and Others, Police Commissioners of the City of New York, Appellants.

*Ballot law — its object — emblems — how State nominations must be made — right of a local faction to use the party emblem — Secretary of State the sole source of information as to State nominations — filing certificate with police commissioners of no effect — order of precedence upon the ballot — failure to file an objection to a nomination — the right of a citizen to redress, not affected thereby.*

It is the intention of the new Ballot Law (Chap. 810 of 1895) to spread before the voter the names of the various persons for whom he is called upon to vote, and he is allowed to vote a straight party ticket or a straight independent ticket or an eclectic ticket, as he sees fit.

The devices or emblems were resorted to in order to enable the illiterate voter to attain these ends.

It is the intention of the law that there shall be a single column for a single party and a single device at the head of that column, so that the voter who desires to vote a straight ticket may vote the ticket under that column.

The certificates of nomination relative to State offices, and the emblem which is to head the ticket nominated, must be filed with the Secretary of State.

Where a convention of a party has been regularly called, has made its nominations and has sent its certificate, containing the device or emblem of the party, to the Secretary of State, that device or emblem controls and must head the nominations of that party for State offices.

Where there are several factions of a party in one county the State convention decides which faction is regular, and because of such decision as to its regu-

larity that one faction becomes entitled to the sole use of the party emblem for its local candidates.

Where an independent party, or a faction, or an individual, claims the right to be upon the State ticket, it or he must make the nomination in the manner prescribed by the statutes, and file his certificate with the Secretary of State, who is the sole source of information to the county officers as to the persons who have been put in nomination for State offices.

Where a local faction files a certificate with the board of police commissioners relative to local nominations, with a notice that it has indorsed certain State nominations, this is not a compliance with the statute, and does not constitute a legal nomination of any person, upon their behalf, for a State office.

The form of the ballot is to be designated by the Secretary of State, and, as he is to certify the nominations in the order in which he has received them, police commissioners cannot ignore his certificate as to precedence and adopt an order of their own.

Although no written objection to a certificate of nomination has been filed in the office in which the certificate was filed within three days after the filing of the certificate, as may be done under section 65 of chapter 810 of the Laws of 1895, any citizen may, under the provisions of section 56 of that act, apply to the Supreme Court, or other proper authority, to review the determination and acts of police commissioners in regard to a certificate of nomination which has been filed.

A citizen is presumably a voter, and as the statute has provided that upon the complaint of any citizen the court shall redress any wrong which may have been committed, whether as against himself or against any one else, the court is bound to entertain a complaint made by him relative to a violation of the Ballot Law.

APPEAL by Theodore Roosevelt and others, commissioners of police, constituting the board of police commissioners of the city of New York, from the following order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 29th day of October, 1895 :

"It is ordered, That the Board of Police Commissioners of the City of New York be and they are hereby restrained and enjoined from printing the names of the candidates for State offices to be voted for by the electors of the entire State at the next general election and nominated by the Democratic party at its State convention held at Syracuse on the 25th day of September, 1895, in any column upon the official ballot to be used at said election in the City and County of New York, under the name or emblem of 'New York State Democracy,' to wit, a 'rooster,' or in any column in which are printed the names of the candidates for local offices nom-

inated by said 'New York State Democracy,' and to be voted for only by the electors of the City and County of New York at such election; and it is further

" Ordered, That the Board of Police Commissioners be and they are hereby enjoined and restrained from printing on the official ballot any candidates of the said 'New York State Democracy,' under said title and emblem, in any column in precedence of columns wherein are candidates for State offices' of political parties certified by the Secretary of State; and it is further

"Ordered, That the said Board of Police Commissioners of the City of New York arrange and print on the said official ballot the names of candidates for State offices to be voted for by the electors of the entire State under the emblems or devices and as arranged in the order certified to them by the said Secretary of State on October 21, 1895, and not otherwise; and it is further

"Ordered, That the said Board of Police Commissioners and the several Commissioners thereof above named, and their agents or representatives, are hereby restrained and enjoined from issuing, circulating, distributing or delivering for use at the next election any official ballot printed in a manner enjoined by this order."

The proceeding was instituted by a petition which set forth, among other things, that certain persons in the city and county of New York, calling themselves the "New York State Democracy," claim to be a political party, with the right to make nominations for offices to be filled by the voters of the entire State at the next election.

That said New York State Democracy filed with the board of police commissioners of said city, on or about the 10th day of October, 1895, what purports to be a party certificate of nomination of candidates for offices to be filled in the county of New York (a copy of this paper was hereto annexed and made a part of the petition); that said body claims the right to have the names of said alleged candidates printed upon the official ballot to be voted at the next general election under the names of the candidates who were nominated by the Democratic State convention, held at Syracuse on the 24th day of September, 1895, for offices to be filled and voted for by the electors of the entire State, said Democratic State convention being the regularly constituted party authority of said Democratic party.

That said persons, styling themselves the "New York State Democracy," also claimed the right to have said candidates' names printed upon said official ballot under a device or emblem chosen by them, and known and designated as a "Rooster." That, heretofore, and on the 16th day of October, 1895, the said claims of the New York State Democracy were considered and determined and declared by said board of police in the favor of said New York State Democracy.

The petition further showed that said body, calling itself the New York State Democracy, did not, under the said title, or any other title or name, hold any State convention or primary, at which party nominations were made of a candidate or candidates to be voted for by the electors of the entire State at the next general election, nor were any primaries of such party called or held at any time throughout the State for the purpose of selecting delegates to constitute a State convention of the said New York State Democracy, nor had any committee of any party convention of said New York State Democracy been authorized to make nominations for State offices; and no device or emblem to designate and distinguish the candidates of said New York State Democracy had been adopted or selected by or at any State convention of said New York State Democracy, nor were any independent nominations made by petition or otherwise by said New York State Democracy as required by law.

That no certificate of nomination of candidates to be voted for by the electors of the entire State, nor device or emblem to designate and distinguish the candidates of said New York State Democracy, has ever been filed with the Secretary of State of this State, as required by sections 56 and 57 of the Election Law of this State (as amended in chapter 810 of the Laws of 1895), nor had the Secretary of State certified to the board of police commissioners of the city of New York the names of any candidates nominated by the said New York State Democracy, either as party or independent nominations, nor certified as aforesaid any device or emblem chosen to represent and distinguish the candidates of said New York State Democracy.

That the Secretary of State had certified to the board of police the names, residences and places of business of each candidate nomi-

nated in the certificates filed with him for State offices for whom the voters of the city and county of New York may vote ; also, the titles of the offices for which candidates were nominated, specifying the name of the party or organization set forth in such certificate and giving a *fac simile* of the emblem or device chosen to represent and distinguish the candidates of the political party or independent body making such nominations. That the name of the political organization known as the New York State Democracy, or the emblem said to have been adopted by it, did not appear on the return so certified to the board of police as aforesaid.

That the Secretary of State has also directed in what order and precedence the tickets or lists of the candidates of the various parties for State offices should be printed and in what columns the same should appear, and had directed what devices or emblems and party names should head such tickets or lists, and had in all respects complied with the provisions of law in such case made and provided. That said board of police were about to arrange said ballot to be printed by it in a manner and form contrary to the directions of the Secretary of State, in whom was vested in the first instance the sole power of arranging and constructing said ballot ; to which certificate the petitioner begged leave to refer upon the argument of the motion.

That at the Democratic State convention, held at Syracuse on September 25, 1895, the delegates of the Democratic organization in the county of New York known as the "Tammany Hall organization" were declared by said convention to be qualified to represent the electors of the Democratic party in the city and county of New York, and were recognized by the said State convention as the only regular Democratic party in said city and county, and that, at the said State convention, the said Democratic party selected a star as its sole device or emblem, and duly filed a certificate thereof with the Secretary of State.

That at said last-named State convention certain persons claiming to be representatives of the said New York State Democracy applied to be admitted to said convention, and that thereupon said Democratic convention, on September 25, 1895, declared as follows :

"*Resolved,* That the sitting members from the county of New York, being the delegation representing the Tammany Hall

organization, are regular, and are entitled to seats in this convention; and said organization is entitled to recognition in the future conventions as regular, and its delegates are to be placed upon the preliminary and other rolls thereof; and, in the appointment of inspectors of election, the use of the party emblem, and in every way in which the question of party organization may arise, said Tammany Hall organization shall be recognized and seated as the regular organization of the party in New York county; but in the interests of harmony at this time the committee recommend, subject to the aforesaid conditions, that the sitting delegates, as well as the delegates known as the State Democracy, be admitted to the convention, with one-fifth of a vote to each State Democracy delegate, and four-fifths of a vote to each Tammany Hall delegate."

That said New York State Democracy thereupon declined to accept the determination and terms of said resolution and took no part whatever at any time in any of the councils, deliberations or proceedings of the said Democratic State convention, held as aforesaid.

That thereafter, at what purported to be a meeting of the executive committee or controlling body of said New York State Democracy in the county of New York, held on September 27, 1895, a report was made by its chairman, Charles S. Fairchild, in which the action of their representatives at the said State convention, in declining to accede to the aforesaid resolution of the State convention of the Democratic party, was in all respects approved, and was subsequently also approved at a so-called county convention of said New York State Democracy, held at Cooper Union, in the city of New York, October 7, 1895. That upon the submission to said executive committee of the said New York State Democracy of the report aforesaid, and its approval by said executive committee of the New York State Democracy in the city of New York, the following resolution by said executive committee was adopted:

" *Whereas,* It is necessary under the present Election Law that the Democratic candidates for state offices shall be nominated by petition in order that their names be printed on the official ballots under the name and emblem of the New York State Democracy and in the same column as the local candidates nominated by said New York State Democracy.

"*Resolved*, That the sub-committee be and hereby is directed to take necessary measures to nominate by petition the candidates for State offices nominated by the Democratic State convention at Syracuse, and cause said certificates to be filed as required by law.

"*Resolved*, That upon all certificates of nomination by the New York State Democracy there be printed the picture of a rooster, which is hereby adopted as the emblem or device of said New York State Democracy."

That at no time has the said New York State Democracy been recognized as part of the regular Democratic organization of this State or county by the State committee of said Democratic party, or by the State convention of said Democratic party.

That no previous application has been made in the premises, and that in consequences of the imminence of the printing of the ballots under the direction of the said board of police commissioners, and the proximity of the election, an order to show cause with notice of less than eight days is asked for.

The petitioner prayed that an order might be issued by the court, returnable at an early day, to review the determination and acts of the board of police commissioners of the city of New York, in respect to the matters set forth in the petition and that any and all certificates of the New York State Democracy purporting to nominate or indorse nominations made by other parties of candidates to be voted for by the electors of the entire State should be declared null and void and without effect, and that the board of police commissioners be enjoined and restrained from printing the names of candidates of the Democratic party for offices to be filled by the voters of the entire State upon the official ballot under the name or title of the New York State Democracy as well as enjoined and restrained from printing the said device of the rooster over the names of said candidates upon said official ballot, and for such other and further relief as the circumstances of the case may warrant.

*Francis M. Scott*, for the appellants.

*Asa Bird Gardiner, David Leventritt* and *Henry D. Hotchkiss*, for the respondent.

*Wallace Macfarlane* and *George Walton Green*, for the New York State Democracy.

VAN BRUNT, P. J. (orally):

Necessarily, owing to the brief time that we have had for the consideration of the question which was presented on the argument this morning, what we can say in reference to the conclusion at which we have arrived must be of a somewhat desultory character, and we can only briefly outline the views to which we have all come upon an examination of the act before us. (Chap. 810 of the Laws of 1895.)

There seems to have been at the foundation of this legislation a scheme that there should be some intelligent action upon the part of each and every voter, and it seems to have been attempted to enable such voter to exercise such intelligent action in as simple a manner as possible. As a consequence, the provision of the law was that there should be spread before the voter the names of the various persons for whom he was called upon to vote. He was to be allowed to vote a straight party ticket; he was to be allowed to vote a straight independent ticket; or he was to be allowed to vote an eclectic ticket, as he might see fit. And it would seem that the tendencies of the law had been to bring that possibility within the reach of each individual voter, and that, as was suggested by the counsel for the appellants, the idea of devices or emblems was resorted to for the purpose of enabling the illiterate voter to attain that end. It was for the protection of the illiterate voter that the emblem was resorted to, and to enable him to exercise his will, as far as he might be able to do, to vote for the candidates whom he might select. This idea is also evidenced by the fact that there is a provision in the act which limits each party to a single device.

The provision in regard to the form of the ballot is: " Every ballot intended for the use of electors, printed in accordance with the provisions of this act, shall contain a party device for each party represented on the ticket. * * * There shall be provided at each polling place, at each election, but one form of ballot for all the candidates for public office, and every ballot shall contain the names of all the candidates whose nomination for any office specified in the ballot have been duly made and not withdrawn in accordance herewith, together with the title of the office, arranged in tickets or lists under the respective party or political or other designation certified. * * * The arrangement of the ballot shall in general conform

as nearly as practicable to the plan hereinafter given. The tickets or lists of candidates of the various parties shall be printed in parallel columns headed by the chosen devices, and the party name or other designation in such order as the Secretary of State may direct, precedence, however, being given to the party which polled the highest number of votes for the head of the ticket in the next preceding general election, and so on. The number of such columns shall exceed by one the number of sets of candidates to be voted for at the polling place for which the ballot is provided, nominated by different certificates of nomination, except as otherwise provided in this section."

Throughout this section there seems to be a recognition of the idea that there should be a single column for a single party, and a single device at the head of that column, so that the voter who desires to vote a straight ticket may vote the ticket under that device. We find, also, when we come to the provisions of the law, in respect to the filing of certificates of nomination, the same idea to prevail. The certificates of nomination in regard to State offices shall be filed with the Secretary of State. The nominating authority shall file with the Secretary of State an emblem which is to head the ticket; and if such an emblem is not filed, then the Secretary of State may select such an emblem; and the emblems or devices so chosen, when filed as aforesaid, shall be used to designate and distinguish all the candidates of the same political party or independent body.

There would seem to be, therefore, an intention upon the part of the Legislature that each party should be represented by a single emblem. That being the condition of the law, it seems necessarily to follow that where a convention of a party has been regularly called, has made its nominations, has sent its certificate to the Secretary of State containing the emblem of that party, that device controls and must head the nominations of that party.

There is a further provision of the statute which authorizes independent nominations to be made. It determines how those nominations shall be made — what shall be done — what shall be filed with the Secretary of State as the evidence of such nomination, and what the Secretary of State shall do in the case of such nomination. But

those nominations are designated as independent nominations. They do not come under the head of the regular party nomination whose convention has chosen the device under which the nominations of that convention are to be presented to the people. Undoubtedly, an independent party may nominate the same individuals, but they must nominate them as an independent party, place them under their device, and list them under their ticket.

Such being the condition of the law, it would seem that it was necessary, in order for any independent organization or any person claiming the right for the presentation of a State ticket upon any ballot to be printed, that they must make the nominations in a manner conformable to the statute and file a certificate with the Secretary of State. Then the Secretary of State certifies the nomination to the county officers — in this county, the police commissioners, in other counties, the county clerk — and from them the county officers get the information or knowledge as to the candidates for State offices which have been put in nomination by the conventions or in the independent manner prescribed by the statute. In the case at bar this procedure has not been followed; it appears that in all the other independent nominations it has been followed. The nominations were made either by convention or by certificate, filed with the Secretary of State. The Secretary of State has certified these nominations to the board of police commissioners, and the board of police commissioners get their knowledge as to these nominations from that certificate, and there is no means by which they can be afforded any legal knowledge whatever as to those nominations, except from the certificate of the Secretary of State.

As far as the State Democracy is concerned, it does not seem to have made any nominations for State offices. It is true it has filed a certificate with the board of police commissioners as to its local nominations with a notice that it has indorsed certain State nominations. But they have not made any nominations in the manner prescribed by the statute or filed any certificate with the Secretary of State. Neither has the Secretary of State certified to the board of police commissioners (from whom alone the police commissioners can get knowledge in regard to any State nominations) as to the fact of this faction having made any nominations for State offices whatever.

That brings us to a consideration of the question in regard to the action of the board of police commissioners in reference to the form of the ballot. The statute provides that, as nearly as practicable, the ballot shall be printed in the form designated by the Secretary of State. And the Secretary of State has certified the nominations in the order in which they have been received by him, and in which they were entitled by the provisions of the law to be put upon the ballot. The police commissioners have ignored that certificate. There is no practical difficulty in the way of having one column here and one there, but they have absolutely ignored that certificate and adopted an order of their own. We cannot find any authority in the law for that. They have no discretion except where it is impossible to follow out the order designated by the Secretary of State.

There is much more that might be said in reference to this matter, and Mr. Justice Barrett will say a few words in regard to the decision of Mr. Justice Cullen, distinguishing the condition of the law which exists at the present time from that which existed in 1894. It is proper, however, that I should call attention to the claim that is made that the respondent had no standing in court. As we understand it, that is founded upon the provisions of section 65 of the act of 1895 (Chap. 810), which provides that a written objection to any certificate of nomination may be filed in the office in which the certificate is filed within three days after the filing of the certificate. It might be said, in the first instance, that as far as these State offices were concerned, there has been no certificate of nomination filed and, consequently, there was no necessity of any written objection. But even if there had been an attempt to file a certificate, the provisions of section 65 were not exclusive. It depended upon what action the police commissioners took upon that certificate of nomination as to whether there was any necessity of intervention or not. Then, by the provisions of section 56 it is provided that "the Supreme Court, or any justice thereof within the judicial district, or any county judge within his county, shall have summary jurisdiction, upon complaint of any citizen, to review the determination and acts of such officer." Now, it is further objected that the respondent here has not shown any interest in this suit, and that courts are not trying moot questions. He is a citizen;

consequently, presumably, a voter. He has an interest, if it were necessary, in having the law carried out in respect to the manner in which the election should be conducted. But that is not necessary. The statute has provided that upon the complaint of any citizen the court shall redress any wrong which may have been committed whether as against himself or anybody else. This might be said to be analogous to the right conferred upon a taxpayer under certain circumstances. A taxpayer's interest is infinitesimal. If he is aggrieved by some particular action of the corporation or its officers it is to so small an extent that the court would not take notice of it as an individual grievance, and never did until the taxpayer was given by authority of law the right to intervene. So, here, the citizen is given the right to intervene, and the court is bound to entertain his complaint if any be made to it.

The order should be affirmed.

BARRETT, J. (orally):

I concur, and will state briefly the grounds of my concurrence.

The key to the solution of the main question here presented is the legislative intention with regard to the new device of a party emblem. Clearly, no State party can have more than one emblem. If that be so, and it is unquestioned, no State party can secure additional emblems through the accident of local dissensions. The State party's emblem runs through the whole State and covers the candidates nominated by its State convention. The policy of the law was to make the ballot clear and to keep it within reasonable proportions by limiting each party to one emblem in one column on a single ballot. If the appellants' contention be correct, emblems may be multiplied indefinitely in each county. The true construction of the act is, that no local division of a State party can vary the emblem adopted by its State convention. Here the attempt necessarily is to vary that emblem.

The State Democracy shows that it is a component part of the Democratic party. That being so, it is bound by the party device. The party authorities of the State Democracy cannot alter its device or substitute another for it. Probably they would not have attempted to do so if they could use it as the means of combining the State ticket with their own local ticket. Practically they cannot

do this because of the action of the State convention; and because they cannot do so they claim the right to vote for the party candidates at large under an emblem other than that chosen by the Democratic State convention. Now, plainly this cannot be. If it were permitted it would destroy the whole system of single State party emblems and single State party columns. The members of the State Democracy are not deprived of their right to vote for the party candidates. They cannot do so quite as conveniently as those who vote a straight ticket; but, to illustrate from the facts before us, they can vote the " star " generally, and their own candidates specially, or they can vote their own emblem generally and the State candidates specially. Their grievance is that they cannot vote a single straight ticket for all the party candidates with their own emblem. But that grievance results from the division in the party, and from the recognition of their adversary by the State convention. It is thus inseparable from their attitude. We may assume that each local faction stands equally as a component part of the party. That very assumption shows that both factions are bound by the State party emblem, and that neither of them can adopt another emblem — I mean another emblem under which to vote the Democratic State party ticket.

It comes back to the original proposition that the State party can have but one emblem, and that, so far as the candidates of the State party are concerned, that emblem is controlling upon all the local factions within the party. Each local faction can have its own emblem only for its own local candidates. Such is clearly the meaning of the words " the names of its candidates " in section 56 of the act of 1895 (Chap. 810). But for its State candidates it can have no emblem save that chosen by the State convention. Where there are several factions of the same party in the county, the State convention decides which faction shall have the advantage of regularity. Because of that regularity one faction becomes entitled to the sole use of the party emblem for its local candidates. Whatever disadvantage results to the opposite faction results from its lack of regularity. It is inevitable to the situation in which it is placed. It must suffer this disadvantage rather than secure an advantage at the expense of the homogeneity of the system planned by the Legislature. The party authorities of the State Democracy could have avoided this incon-

venience by resorting to the statute as to independent nominations. In that case they might have had a straight ticket consisting of these very State candidates and their own local candidates under one independent emblem. But as they did not make either a party nomination (and they could not have done so without becoming a new party) or independent nominations, as, in fact, they rely upon their position as an integral part of the Democratic party, they cannot place the State candidates of their party under any emblem save that chosen by their State party convention. It seems to me that that is entirely clear.

My attention has been called to the opinion of Mr. Justice CULLEN in *The Matter of Madden* (not yet reported). I would entirely agree with this learned justice if the law were the same as that which was considered in *The Matter of Mitchell* (81 Hun, 401). But, as we have seen, the act of 1895 is a radical departure from the previous ballot law. The crucial change in the present system is not only the substitution of a single ballot for all the candidates, as observed by Mr. Justice CULLEN, but the provision for a single emblem for each party, under which — and under which alone — the party ticket as such can be voted. It is true that the voter can now vote for that ticket in a variety of other ways and under other party emblems or under independent nomination emblems. But if he desires to vote for that ticket as such — that is, for the straight party ticket in the State — he must vote for it under that party's lawfully chosen emblem.

My conclusion is that, throughout the length and breadth of the State, the ticket of each party for State officers must be in a single column, and must be headed by such party's chosen emblem. No local division of such party, regular or irregular, can, in its locality, choose for the party at large another or different emblem, nor, certainly, can any county clerk or board. Each local division can undoubtedly choose an independent emblem for its local candidates — meaning, of course, its local candidates as distinguished from its State candidates. For the latter it cannot choose an independent emblem. Its State candidates are the candidates of the party at large, and the choice of an emblem for that party is vested by law exclusively in the State convention. It follows that the board of police erred in giving to the Democratic party, as it has, an addi-

tional column on its proposed ballot and an additional emblem. It also erred in varying the precedence given to the various party columns, according to law, by the Secretary of State.

For these reasons I concur that this order should be affirmed.

O'BRIEN, J., concurred.

Order affirmed.