falls clearly within the terms of the section quoted. It is unnecessary, therefore, to express any opinion upon the merits of the claim.

The order will be reversed and the motion denied, with ten dollars costs and disbursements.

All concurred.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

---

In the Matter of the Objections to the Certificate of Nomination for Member of Assembly of the Second Assembly District of Westchester County; RICHARD S. EMMET, JR., Appellant; JOSEPH E. ENNIS, Respondent.*

*Election Law — when it is too late to review an order reversing the decision of the filing officer as to who is the regular nominee of a party.*

An appeal from an order, reversing a decision made by the county clerk of Westchester county, determining that one of two rival claimants was the regular nominee of the Republican party for the office of member of Assembly in the second Assembly district of Westchester county, and directing that his name be placed upon the official ballot in the column of the Republican party, came on to be heard before the Appellate Division eight days before the date of the election at which the office was to be filled.

Section 56 of chapter 810 of the Laws of 1895 provides that the court may "make such order in the premises as justice may require," but by section 56 of chapter 909 of the Laws of 1896 it is provided that "such order must be made on or before the last day fixed for filing certificates of nomination to fill vacancies."

*Held,* that the Appellate Division could make no order which would be effective, and that the appeal should be dismissed.

HATCH, J., dissented.

APPEAL by Richard S. Emmet, Jr., from an order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 19th day of October, 1896, which reversed the decision of the county clerk of Westchester county, which determined that Richard S. Emmet, Jr., was the regular Republican nominee for member of Assembly in

---

* On an appeal to the Court of Appeals the order of the Appellate Division in this case was reversed, and the case was remanded to the Appellate Division for such further proceedings as it might deem proper.— [REP.

the second Assembly district of Westchester county, and which directed the said county clerk to place the name of Joseph E. Ennis upon the official ballot in the column of the Republican party for said office of member of Assembly. The facts more fully appear in the dissenting opinion of HATCH, J.

The following opinion of Judge BROWN was delivered orally.

*James M. Hunt* and *Roger M. Sherman*, for the appellant.

*H. O. Henderson*, for the respondent.

BROWN, P. J.:

In this case, which is entitled "In the Matter of the Objections to the Certificate of Nomination for Member of Assembly of the Second Assembly District of Westchester County," the court is of the opinion that it can make no effective order in the case. The statute of 1895 (Chap. 810, § 56) provided that the court could "make such order in the premises as justice may require." By the amendment made to the law in 1896 (Chap. 909, § 56) it was further provided that "such order must be made on or before the last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in subdivision one of section sixty-six of this article." That subdivision requires that the certificate of nomination for member of Assembly shall be filed with the clerk fifteen days before the election, so that, in compliance with that provision of the statute, it is impossible for the court to make any order that would be effective in this matter. The case from the fourth department, to which our attention was called, was decided under the act of 1895, and has no application to this case. Therefore, the appeal that is taken is dismissed. That is the view of three judges of the court. Judge HATCH has dissented from that view, and he has expressed the views which he has taken in a written opinion which will be filed with the clerk.

All concurred, except HATCH, J., dissenting, and BARTLETT, J., not sitting.

HATCH, J. (dissenting):

The order appealed from was made by the court below on the 17th day of October, 1896. The direction by the learned judge who granted it was in the following words: "The county clerk of Westchester county is directed to file the foregoing order immediately

upon the presentation thereof to him." In the usual course of judicial procedure, the party obtaining an order favorable to his contention enters the same, and the party affected thereby may usually rely upon his so doing. The case presented necessity for expedition, as the time in which the rights of the parties could be determined, if it was sought to review the order by appeal, was extremely short. The appellant appealed from the order to this court upon the day (Saturday) on which the order was made, and promptly appeared in court to argue and submit the appeal at its opening on Monday, October nineteenth, that day being the first day of the session of the court following the making of the order. He was met by the objection that no order had been entered by the clerk, and that consequently there was nothing before the court for review. This objection prevailed, and the court declined to entertain the appeal for that reason. After this dismissal, but upon the same day, the order was entered; and the appellant immediately took this appeal and has brought the matter again to the attention of the court as soon as judicial machinery permitted. No excuse or reason is assigned why the order was not promptly entered by respondent and none suggest itself to the court, except that delay might allow the election statute to operate and prevent a review of the order. Such practice does not commend itself to the court nor does it consort with fairness and justice. The court should not lend aid to its success unless compelled thereto by an unyielding statute.

It is desired, before considering the question of power in the court to now make an effective order, to look somewhat at the merits of the application which is now before us. It appears without dispute that the representation to the second Assembly district of Westchester county is made up of seventy-one delegates from the various towns and districts in such Assembly district. That of this number Richard S. Emmet, Jr., received forty-eight votes, being a majority of the whole number of elected delegates at a convention claiming to be the regular Republican Assembly convention, called by the regular machinery of the party in that district, which met at New Rochelle, October 7, 1896. The primaries which elected these delegates were conceded to be regular, and there were no contests in any of the towns comprising the district, except in the town of Harrison, to which were accredited five delegates.

Joseph E. Ennis, whose name is directed to be placed upon the official ballot, claims to be the regularly nominated member of Assembly from said district. . He was nominated by a convention claiming to be the regular Republican Assembly district convention, called by the regular party machinery of the district, and held at White Plains, in said district, on the 6th day of October, 1896. It nowhere appears in the record before us how many delegates attended the convention. It was stated by counsel upon the argument, and not controverted, that but twenty-three delegates were present. We have, therefore, the fact that the delegates, who represented the district which made these two nominations, were the regularly accredited delegates of the whole body of Republicans composing the district. Had they all met at one time and in one convention, the votes which were given for Emmet would have constituted him the party nominee for this office. Meeting separately, he still has a substantial majority, nearly two-thirds of all the delegates. Unless, therefore, some insuperable obstacle stands in the way, he ought, in good conscience and equity, to receive the benefit which almost uniformly follows the majority vote. The court below, in disposing of the present question, made the right to a place upon the official ballot to depend upon the regularity of the call of the nominating convention by the constituted authorities, and, so far as appears, did not consider the fact that Emmet had received nearly two-thirds of the votes of the accredited delegates. It appears by the record that, on August 3, 1896, in pursuance of a regular call, there met at Tarrytown, in said county, an Assembly district convention for the purpose of selecting delegates to attend the State, judicial and congressional conventions of the Republican party thereafter to be held, and to perform such other duties as should properly come before it. The Assembly district committee who issued the call, as there were several contesting delegates, met for the purpose of making up a temporary roll of delegates for the organization of the convention. The call for the convention required it to meet at twelve M. At that hour the committee had not finished its labors, but the delegates had assembled at the hall. How many, does not appear. Upon motion of one of the regularly elected delegates, one John J. Mahaney was elected chairman of the convention and possessed himself of the platform. At about this time and at twelve minutes past twelve

o'clock, the committee, having finished its labors, entered the convention hall, headed by its chairman, Jacob Halstead, who demanded the right to call the convention to order; his demand was refused, and, Mahaney insisting upon acting as chairman of the convention and proceeding with the organization, the committee withdrew from the hall and, proceeding to another room in the same building, organized a convention. It was stated by the learned court below that the delegates who remained in the hall constituted a majority of the delegates. In fact, both conventions claimed to have a majority of the delegates, and the fact, doubtless, depended upon the determination of the claims of the contesting delegates. Whether the usual course in Westchester county devolved upon the committee, designated to call the roll of the convention, the duty of preparing a temporary roll of the delegates in case of contest, and upon the chairman of the committee the duty of calling the convention to order; or whether the delegates themselves proceeded to organize the convention, is a disputed question upon the record before us. There must rest somewhere some power to determine who are delegates entitled to participate in the temporary organization of the convention. It is the established custom in the national convention of the Republican party for the national committee to make up the temporary roll, for its chairman to call the convention to order and to present the temporary presiding officer for acceptance by the convention as thus made up. That such rule is observed in other jurisdictions of the Republican party in this State the appellant's affidavits tend to establish, and the necessity for it in case of contesting delegations for purposes of temporary organization is apparent, for, until that question be settled, both sets of delegates have *prima facie* the right to participate, which fact may operate to the disadvantage of the rightful delegates and give undue representation to the disadvantage of delegates from other localities. The right to determine preliminarily this question would seem to rest with the committee authorized to call the convention. Undoubtedly the convention has the right to organize itself in the absence of the chairman of the committee, assuming that he possessed the power to call it to order. But when the committee was engaged in the discharge of its duties and was actually present near the hall — which it may be safely presumed was known to the delegates — a reasonable time

ought to have been allowed for the committee's appearance, and I think we may safely assume that twelve minutes was not an unreasonable time to wait.

Assuming, however, that the question of regularity of the two conventions remains a question of doubt upon the record, we may well rely upon the action of the constituted authorities which had the power of review and determination of the question of regularity. It appears that each of the two conventions elected delegates to the State, judicial and congressional conventions respectively of the Republican party, and also appointed committees to call the Assembly district convention for the purpose of nominating a member of Assembly. The delegates elected by the Halstead convention were admitted by the respective conventions to which they were sent, and the delegates from the Mahaney convention were rejected after their claims had been heard. The question of the effect of party action by the supreme authority in the State upon the regularity of conventions and their action has not been viewed alike by judicial tribunals. Mr. Justice ADAMS, in *The Matter of Woodworth* (16 N. Y. Supp. 147), held that the court would examine the evidence and determine for itself the regularity of selection and action by the delegates in convention. Upon reflection the learned judge modified his views somewhat and held that, where there had been action upon the regularity of the convention by superior authority in party regulation, such action is to be regarded as binding upon the courts. (*Matter of Redmond*, 5 Misc. Rep. 369.)

The *Woodworth* case was affirmed upon appeal upon the ground that the order was not appealable, but there was no discussion of the rule which governed the action of the court in the *Redmond* case. (See 64 Hun, 522.) And the learned judge again adopted the same rule in *Matter of Pollard* (55 N. Y. St. Repr. 155).

In *The Matter of Broat* (6 Misc. Rep. 445) Mr. Justice HERRICK held that the determination of party conventions and committees had no weight whatever in determining whether the action of these bodies was in conformity with the laws of the State. In *Matter of Mitchell* (81 Hun, 401) this question was quite elaborately considered, and this court held that courts would inquire into the action of political conventions irrespective of the determination by superior

party authority.  I conceive the rule of this case to be that, so far as the action of caucuses and conventions is concerned, which is regulated by law, it is the duty of courts to see that the law has been complied with, and that they will make inquiry to that end.  But so far as party usage and custom is concerned, which does not find regulation by statutory authority, and is not governed by some fixed and definite rule for party action, the action of the supreme authority in the party would have great, if not controlling, weight.  So far as applicable here, it does not appear that there existed any settled, definite rule governing the question as to who should make up the roll of delegates for temporary organization, or who was the proper person to call the Tarrytown convention to order; and it may well be that, under such circumstances, we ought to regard the action of the convention in receiving the delegates of the Halstead convention as final, and conclude that, therefore, the committee which was appointed by such convention had authority to call the Assembly district convention which nominated Emmet.  But, aside from this, we have the fact that the delegates who certainly had authority to act have acted and that they have, by nearly a two-thirds vote, named a candidate. The order of the court below deprives that candidate of the rights secured thereby, and makes party regularity superior to the act of accredited delegates.  It gives effect to the shadow and not to the substance.  It makes the order of the court superior to the concededly expressed will of the people by their delegated authority.  And it absolutely, for all practical purposes, prevents the voters from casting their votes for the nominee thus named.  Not alone does this result, but, by act of the respondent in failing to enter the order, the aggrieved party was denied his remedy.  Are we now powerless to right this wrong and prevent this injustice?  It is said that we are.

Claim is first made that the order is not appealable.  The court so said in the *Woodworth Case* (*supra*).  But it was there said, not so much in denial of the right, as for the reason that any order which the court might make would be futile.  In the *Mitchell Case* (*supra*) the court held the order appealable where there remained time in which relief might be granted.  In *Matter of Cuddeback* (3 App. Div. 103) the court, upon appeal from an order which reversed the action of the county clerk in refusing to file a certifi-

cate of nomination, not presented within the statutory time, entertained the same and reversed the order of the court and affirmed the decision of the county clerk, although the time within which the order could be made effective had expired. The proceeding in this case still remains an appeal from an order, notwithstanding the assertion by the respondent's counsel that it was a proceeding by mandamus. The rule seems to be that the order is appealable and will be entertained when it can be made effective, or where the determination involves a question of public importance, or where there exist conflicting decisions of the lower courts. (*Matter of Madden*, 148 N. Y. 136.)

It is said that any order which we may make cannot be rendered effective. If this be so, then we ought not to make any that interferes with the ballot. The Election Law contemplates that a ballot may be changed by order of the court at any time before election, if such course be necessary to correct any error or omission therein. (Election Law, § 88.) In fact there still remains time in which any order we may make in this matter can be rendered effective. Excluding the day of our decision and election day, there remain seven full days. The first official act which the clerk is required to perform, following the last day of filing certificates, is provided by section 61 of the Election Law, when he must publish a list of the candidates. This would happen on the day following our decision. He is also required upon the same day to forward to certain officers printed lists of the candidates, and the same are to be posted three days before the election. Aside from this, the clerk is required to do no act before this time, beyond the preparation of the ballots, and they are not to be delivered until the Saturday before election. (Id. § 87.)

It is, therefore, apparent that, so far as the Election Law prescribes duties to be performed by the clerk, our order would not have the effect of interfering with the duties charged upon him.

It is further urged that section 56 of the Election Law is mandatory, in that the order contemplated by the section requires that it shall be made on or before the last day for filing certificates with the county clerk, which must be at least fifteen days before the election. The language of the section as it stood in 1895 authorized the court "to make such order in the premises as justice may

require."   The amendment to this section in 1896 (1 General Laws, 1896, p. 922) added to this language the words, "but such order must be made on or before the last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in sub-division one of section sixty-six of this article."   This language, literally construed, does not embrace the order to be made by this court.   The order was made by the court below upon application of the respondent, and was so made within the time prescribed by the statute.   It is that order which is now appealed from and which we have authority to review.   Concededly, the established rule in the construction of statutes is that the intent of the lawmakers shall govern.   But, as was said by Judge EARL in *The People ex rel.* v. *Comm'rs Taxes of N. Y.* (95 N. Y. 554), "Whenever it happens that the sense of the law, how clear soever it may appear in the words, would lead to false consequences and unjust decisions, the palpable injustice which would follow from its literal sense compels an effort to discover some kind of interpretation, not what the law literally says, but what it means."   So when the literal language of the act does not place a prohibition upon the act which it is sought to have done, courts are not bound to search for an intent outside of the literal language of the statute which would lead to a result palpably unjust.   A construction which leads to an absurd result will always be avoided.   (*Commonwealth* v. *Kimball*, 24 Pick. 370.)

And one which leads to the perpetration of a wrong ought to be avoided when possible.   Usually, when an act requires a thing to be done in a particular way, that manner alone must be followed. But such questions are largely governed by considerations of convenience and justice; and when the particular manner of doing the act involves "injustice to innocent persons, or advantage to those guilty of the neglect, without promoting the real aim and object of the enactment, such an intention is not to be attributed to the Legislature." (Endlich's Interp. of Stat. § 433.)   In the determination of the question whether a statute is mandatory or directory a general rule is not easily formulated, as the question must depend upon many particular considerations.   But generally, when the limitation is not placed upon the jurisdiction and power itself, but only upon the manner and time of its exercise, it may be and has been con-

strued to be directory. (Black Interp. § 124, p. 338; *Bladen* v. *Philadelphia*, 60 Penn. St. 464.)

It is also laid down as a rule of construction that, where the provisions of the law which have been disregarded form an important part of a complicated system, it is of importance to examine the other parts in order to determine what effect the failure to comply will have upon the associated parts of the act. (Black Interp. § 123, p. 335.)

Applying these rules to the particular case now in hand, we have no difficulty in seeing that the construction which prevents a review of this order leads to the perpetration of injustice upon the appellant and practically defeats the right of a large class of voters. There is no limitation placed upon our power to review this order and render a decision thereon, as there is no prohibition in the statute itself. The whole theory of the Election Law seeks to formulate a plan by which the free, fair and independent desire of the elector may find expression. The fact that some of its provisions seem destructive of this end does not militate against this theory. This relates not alone to the casting of the vote, but to all the steps which are provided for placing the candidates upon the ticket. The preservation of the latter right is as important as is the preservation of the right to vote and to have the vote made effective. In *People ex rel. Hirsh* v. *Wood* (148 N. Y. 147) the court said: "The object of election laws is to secure the rights of duly qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice and to prevent fraud, and not by technical obstructions to make the right of voting insecure and difficult."

Among the rights of duly qualified electors is the right to vote for a candidate who has been selected by their accredited delegates, and when this privilege is denied to them their right thereto is defeated. The denial to Emmet of a place upon the ticket is a denial not alone of a clear right possessed by him, but is for all practical purposes a denial of the right of the electors to vote for him. This right has been denied by the interposition of technical objections and by sharp practice in withholding from entry the order made by the court below. It should not be allowed to prevail, as the court can now make its order effective, and the statute

admits of a construction which does not prohibit this order. In the interests of justice and right the appellant should prevail.

The order appealed from should be reversed, and the decision of the county clerk should be affirmed, and the latter should be directed to place the name of Richard S. Emmet, Jr., upon the official ballot.

Appeal dismissed.