(18 Misc. Rep. 307.)

### FRENCH v. ROOSEVELT et al., Police Commissioners.

(Supreme Court, Special Term, New York County. October, 1896.)

ELECTIONS—NAMES ON OFFICIAL BALLOTS—WHO ARE NOMINEES.

Where a person appointed by the Republican county committee to open and preside over a convention until the election of a temporary chairman refused to recognize the authoritative character of the roll of delegates, but took a viva voce vote on such chairman, and the majority of the delegates refused to

accept the chairman so elected, and retired to another part of the house, and elected another chairman, and proceeded to nominate candidates, the nominations so made are the regular nominees of the party, whose names are entitled to be printed on the official ballot, rather than those nominated by the delegates who remained under the first chairman.

Proceeding by Samuel G. French against Theodore Roosevelt and others, commissioners of police of the city of New York, to review the decision of the board. Plaintiff moved that his certificate of nomination as candidate for member of the assembly in the Twenty-Ninth district be accepted, and that of Lawrence E. Brown be rejected. Denied.

Frank D. Pavey, for the motion.
Edward F. Brown, opposed.

BEEKMAN, J. The necessity for an immediate decision in this matter, and the press of other business in this part of the court, leaves me no time to do more than present, in brief form, the conclusion to which I have come after an examination of the very voluminous record submitted for my consideration. I do not think it is necessary for me to determine whether, under the constitution of the Republican organization, the county committee has any power to designate a person to call the convention to order, and preside over the election of a temporary chairman, in view of the fact that the act of Mr. McConaughy, in so doing, was generally assented to. The fact that he assumed to do so by virtue of such designation was made very clear when, in answer to a question respecting his authority, he replied that he claimed to act under authority of the county committee, a claim which was allowed to pass unchallenged, and upon the faith of which, apparently, the element in the convention favoring Mr. Brown's nomination yielded a tacit consent to Mr. McConaughy's action. It was only when he refused to call the roll of the convention on the vote for temporary chairman that a protest was made against his conduct, and the proceedings followed which resulted in the election of rival officers and nominees by the contending factions. The claim is now made that Mr. McConaughy did not have the roll with him, but it is also accompanied by the frank admission that, even if it had been in his hands, he would have refused to recognize it. The papers, however, show that a certified copy of this roll had been transmitted to him when he was notified of his selection; and, had it not been for his predetermination not to use it, there can be no doubt that he would have brought it with him to the convention. A few words respecting the character of this roll becomes necessary. By the constitution of the Republican organization it is provided that after the polls are closed at a primary election the inspectors shall proceed with the canvass of the ballots, and "shall publicly announce the result as soon as ascertained, and shall, before leaving the place of meeting, certify the same in duplicate, and within twenty-four hours shall deliver one copy of the returns to each person or delegation elected, and file the other with the secretary of the county committee." The paper transmitted to Mr. McConaughy by the secretary of the county com-

mittee was a certified copy of the return made by the inspectors of election at the primary election which selected delegates to the assembly district convention, and which, under this provision of the constitution, has been filed with the county committee. There is nothing in the constitution which states the purpose of this filing, but it may properly be inferred that its object was to supply evidence, for whatever purpose it might be useful, of the due election of such delegates. It was properly susceptible of use for the purpose of making up a temporary roll of the convention, although such roll could also have been made from the duplicate certificates of election issued by the inspectors of election to the delegates who had been chosen. The necessity for such preliminary roll in such cases is plain; otherwise the officer or person calling the convention to order and presiding over its action in the selection of the temporary chairman is absolutely without proper evidence before him of the right of those voting to take part in the proceedings of the convention. The duly-certified action of the inspectors of election, and the right of the delegates who are certificated by them to their seats, cannot be questioned in the proceedings for temporary organization, for it is the delegates themselves who are the judges of the election and qualification of the members, and until the credentials have been passed upon by them they are unassailable. The action, then, of Mr. McConaughy in repudiating this roll was a mistake on his part, and the selection of the temporary chairman upon a mere viva voce vote, where there was a volume of voices both for and against the nominee, was apparently unsupported by any evidence of the right of those voting to do so. The danger of taking a vote viva voce under such circumstances is manifest, as no opportunity is presented for an objection to the reception of a vote, and the chairman, even presuming that he had personal knowledge with respect to the authority of any of the delegates, would be utterly unable to determine in the unison of voices whether all of those who participated were entitled to do so. I think, therefore, that when a demand was made for a roll call on the election of the temporary chairman, it should have been recognized by him, and, if such a roll was not at hand, it should have been made up of the certificates of election in the possession of the delegates. Having accepted the authority of the county committee in designating him, he should have recognized the roll which had been furnished to him; and for the purpose of showing that there was precedent for this the respondent instances the case of another local convention within the same assembly district in which a similar designation had been made by the county committee of a person to call the convention to order, and the acceptance of a similar roll of delegates as the basis of the preliminary organization. Under these circumstances it becomes necessary to consider whether the action taken in the selection of Mr. Elsberg as temporary chairman, thus displacing Mr. McConaughy, was substantially the action of a majority of the convention. In such cases as this the court will ignore the form and consider the substance of things, where the interests of justice seem to require it. I shall not, therefore, inquire into the jurisdiction of the

committee on organization to pass the resolution which they did that, in the event of Mr. McConaughy refusing to recognize the roll of delegates which had been furnished to him, the convention should be called to order by Mr. Buchanan. The action of the latter seems to have been supported by a majority of the delegates, and as it was largely formal in its nature, consisting simply in putting a nomination for temporary chairman to vote, whatever was done was the act of the delegates, who alone had the right of determining the temporary organization of the convention. The course pursued in the selection of Mr. Elsberg as temporary chairman was in accordance with a practice which, as I have stated above, should have been followed by Mr. McConaughy. There was a roll call based on the official action of the inspectors of election, and the selection was made upon that basis. In that action 65 delegates participated, which was more than a majority of the whole, the total number being 109.

Affidavits have been produced which seem to sustain the claim that Mr. Brown, who was the nominee of the Elsberg convention, received a majority of the votes of the delegates. As these two conventions, so to speak, were both being held at the same time in one room, in an atmosphere also of extreme partisanship and passion, the confusion which existed was inevitable, and a liberal allowance must, therefore, be made for lack of formality. I have felt, therefore, that in disposing of this matter the propriety of whatever was done should be determined rather by the sanction given to it by the delegates than by the formality with which such sanction was expressed, and by the fairness with which the proceedings were conducted on either side. The division which resulted in the nomination of the rival candidates is directly traceable to the refusal of McConaughy to recognize the authoritative character of the roll of delegates above referred to, or to make a roll from the credentials in the hands of the delegates then present, or to adopt any other method by which it could be ascertained whether those voting viva voce had any right whatsoever to take part in the work of the convention. For this refusal he was substantially deposed by a majority of the delegates, and the action subsequently taken by the convention, and the nomination of Mr. Brown, should, I think, for the reasons which I have given, be recognized as legal. This was the conclusion to which the police commissioners came by unanimous vote, and, being of the opinion that their conclusion was a just one under the circumstances of the case, it follows that their action must be confirmed. The motion is therefore denied.

Motion denied.