---

(21 Misc. Rep. 543.)

### In re CLERK OF CLINTON COUNTY.

(Supreme Court, Special Term, Clinton County. October, 1897.)

1. COUNTY CONVENTIONS—REGULARITY.

The chairman of the county committee, at the place appointed to hold the county convention, advanced to the platform to call the convention to order, and the leaders of a rival faction of the party, who had taken possession of the hall with an armed force, caused to be served on him an ex parte injunction obtained by one of their number, and kept secret until that moment. In the confusion, and while the chairman was examining the order, the leader of the rival faction, not a delegate to the convention, called it to order, and declared the election of a chairman. A majority of the regularly elected delegates protested, and the chairman, finding the injunction order harmless, called the convention to order, and entertained motions for organization. A

majority of the delegates took seats in the convention called by the county chairman, and the two bodies, sitting in the same room, each proceeded to the nomination of a county ticket. The party usage has always been for the chairman of the county committee to call the convention of the party to order. *Held*, that the nominations of the convention called to order by the county chairman were the regular nominations of the party.

2. SAME—PARTY USAGE.
Party usage, not inconsistent with good morals or the letter or spirit of statute law, is a law to party conventions.

3. PRIMARY ELECTIONS—CERTIFICATES.
Certificates representing the minority in the primaries, not signed by the officers of the primaries, do not give the holders thereof any title to recognition as delegates to a county convention.

4. SAME—PROCEDURE.
A primary election was held, at which about 600 voters attended. There were two tickets in the field, and, before the hour for opening, the adherents to one faction took possession of the room in which the primary was appointed to be held. The room would not hold over 200 people, and had only one entrance. A person belonging to the faction which filled the room called the primary to order, declared the election of a chairman and clerk, who also belonged to the same faction, and the clerk was directed viva voce to cast the vote for the delegates of the same faction, and within 10 minutes the primary had adjourned. The proceedings were objected to by voters inside the room, and more than half the voters were outside the room, unable to get in, and ignorant of what was being done. Immediately after adjournment the other faction called the primary to order again in the same room, a new chairman was elected, and a vote by ballot taken at the entrance of the room, all voters being given an opportunity to vote. *Held*, that the delegates elected by the second organization were the regular delegates.

5. SAME.
It is the duty of the chairman of a primary election to adopt such methods in conducting it as will secure to every voter his right to vote, so that there may be a "fair, full, and free expression of the party will."

Proceeding as provided by Election Law, § 56, by Everett C. Baker against the county clerk of Clinton, to review the determination of said clerk as to certificates of nomination declared by him to be invalid.

Royal Corbin, for county clerk.
J. H. Borst (Marcus T. Hun, of counsel), for E. C. Baker.
Wheeler & Woodward (Lewis E. Carr, of counsel), for G. H. Beckwith.

KELLOGG, J.   It appears from the papers before me that two certificates of nomination to the office of member of assembly and office of coroner have been filed with the county clerk of the county of Clinton, each claiming regularity, and to be the true conclusion of the same convention.   Objections to each certificate were duly filed, and upon affidavits used before him the clerk has made a determination. Complaint is made by Mr. Baker, the person nominated for the assembly, as appears by the certificate of nomination declared by the clerk invalid, and the matter comes here for review, as provided by section 56 of the election law.   The evidence before me, which comes in the form of affidavits, is not the most satisfactory character of evidence in matters where the facts are disputed.   I have given all the affidavits most careful and critical examination, and find that much

that is material is not disputed, and that at least may be accepted as
the truth.    It is not disputed that David F. Dobie is the chairman of
the county committee, and F. F. Hathaway is the secretary, and that
these two, with Stephen Moffitt, are the members elected by the last
convention as committeemen at large for the county.    It is not dis-
puted that Dobie, as chairman, and Hathaway, as secretary, were au-
thorized by the county committee and did call a county convention for
October 5, 1897, at 2 o'clock p. m., to be held at the court house in the
village of Plattsburg, and for primaries to be held in each of the 14
towns on September 28, 1897, at 2 o'clock p. m.    It is not disputed that
primaries were duly called and held in conformity with such require-
ment, and none others were called and held in any town.    It is undis-
puted that all of the 14 towns were entitled to equal voice in such
convention, and the right to cast 5 votes each.    It is disclosed by the
papers, and is undisputed, that at the time of holding the primaries,
and some time prior thereto, there existed two factions in the Repub-
lican party, one known as the "Wever faction" and the other as the
"anti-Wever faction"; that the Wever faction had a candidate for the
assembly, Mr. Beckwith, and the anti-Wever faction a candidate for
the same office, Mr. Baker; that in all the towns of the county, except
the towns of Black Brook, Champlain, Clinton, Ellenburg, Plattsburg,
and Schuyler Falls, a vigorous canvass was made by each faction, and
the strife was continued at the primaries.    It is undisputed that in
all these contested towns except Beekmantown the vote was taken by
ballot, and full opportunity was given, with abundant time for voters
to make and cast their ballots; that the ballots were honestly counted,
and the delegates having the majority of votes were declared elected,
and duly certified by the chairman and secretaries to the convention,
in accordance with party usage.    It is disclosed by the papers, and
not disputed, that the result of the primaries as so declared was as
follows:

For the anti-Wever faction:

| | |
|---|---|
| The town of Altona | 5 votes |
| The town of Ausable | 5 votes |
| The town of Champlain | 5 votes |
| The town of Clinton | 5 votes |
| The town of Ellenburg | 5 votes |
| The town of Mooers | 5 votes |
| The town of Plattsburg (Dobie) | 1 vote |
| | 31 votes |

For the Wever faction:

| | |
|---|---|
| The town of Chazy | 5 votes |
| The town of Dannemora | 5 votes |
| The town of Plattsburg | 4 votes |
| The town of Saranac | 5 votes |
| The town of Schuyler Falls | 5 votes |
| The town of Peru | 5 votes |
| | 29 votes |

The foregoing statement of declared results of the primaries em-
braces all the towns in the county except Black Brook and Beekman-
town.    It is undisputed that no delegate from the town of Black
Brook acted or voted with the Wever faction; nor were their creden-

tials presented in that faction or in the assembly by that faction organized, but one of the delegates from that town presented the credentials of the entire delegation in the convention called to order by Chairman Dobie, and voted the five votes of the town there, with the consent of the convention, and without opposition on the part of the other delegates from Black Brook, and apparently in accordance with the party usage. The town of Beekmantown will be considered later on.

It is undisputed that after the primaries were held, and before the day of the convention, one Benton Turner, a prominent leader in the Wever faction, publicly declared that "they would carry the convention if they had to do it by force"; that the day before the convention he procured to be appointed about 50 policemen, retainers, and had them armed with clubs, and on the day of the convention, and before the hour of meeting, with these armed men, took possession, to the exclusion of the sheriff, of the court-house building, in which the convention was appointed to be held. And on the appearance of Mr. Dobie, chairman of the county committee, for the purpose of calling the convention to order for organization, Turner, Wever, and Lockwood, leaders of the Wever forces, commanded the policemen to arrest him, and in obedience to such command a policeman came to Mr. Dobie, placed his hand upon him, and declared that he arrested him. There does not appear to have been any occasion or reason for the presence of this armed body of men beyond serving the purposes of the Wever faction. It appears by the papers, and is undisputed, that by the rules and unvarying usage of the party in Clinton county, the chairman of the county committee has the right, and it is his duty, to call and organize the county convention, to put to vote the motions for chairman of the convention, and declare the result of such vote; and, when present in the convention, and willing to discharge that duty, no other person can be recognized as possessing that function. It appears by the papers, and it is undisputed, that Mr. Dobie, the chairman of the county committee, was one of the first in the convention room, and was known to be there by the delegates and by Wever and Mannix and other leaders of the Wever faction; that, while advancing to the platform for the purpose of calling the convention, the leaders of the Weaver faction caused to be served upon him an injunction order issued at their instance by a justice of this court ex parte, and on the application of one Mannix, and kept secret until that moment; that while Judge Dobie was examining the paper to discover its purport, and while he was in plain view of the delegates assembled, and known to be there to exercise his rights to call and organize the convention, one Thomas F. Mannix, the person who procured the injunction order, though not a delegate to the convention, mounted the platform, and declared that he called the convention to order, and declared that the motion carried that one Duffy was chairman. This seems, from the papers, to have been done with great rapidity, before all the delegates had assembled, and while great confusion prevailed, and within one or two minutes after the service upon Dobie of the order he had procured, and before Judge Dobie had had time to discover its contents. It appears by the affidavits presented by the complainant

that a majority of the regularly elected delegates protested against this action of Mannix, and refused to recognize the proceedings so taken. It also appears, and is undisputed, that immediately, and about the time Duffy was taking his place on one end of the platform, Chairman Dobie appeared upon the platform, and proceeded at once to call the convention to order, and entertain motions for the election of a chairman, and that at this juncture the appointed policemen were commanded by Wever, Turner, and Lockwood to arrest him, and insisted upon his arrest and removal from the room. The scheme of removal seems to have failed, owing to a disappointing lack of hardihood developed unexpectedly on the part of the armed contingent.

The affidavits presented on the part of the Wever faction are conspicuously silent on the subject of threats, appointment, and purposes and use of this extraordinary armed force, and the use made of an injunction order never intended by the justice who issued it, and we must conclude that the affidavits of complainant fairly disclose the facts and purposes touching these. All these matters have a bearing upon the question of the regularity of the convention called to order by the chairman of the county committee. There is no dispute but he did call the convention to order, and the proceedings thereafter in that convention were conducted regularly, decently, and in order to its final close. It was held in the room in which the delegates first assembled, and in another part of the same room the assemblage called together by Mannix proceeded at the same time to make nominations. It is not disputed that in the convention called to order by Chairman Dobie, all the regularly elected delegates hereinbefore mentioned from the towns of Altona, Ausable, Champlain, Clinton, Ellenburg, and Mooers, and Delegate Dobie in Plattsburg, numbering 31, and the delegate from the town of Black Brook, as stated, took seats, and voted, and none of them voted in the Mannix assemblage. It is also undisputed that this convention excluded none of the delegates regularly elected in other towns. It is also undisputed that Mr. Baker received the votes of all the delegates in this convention. It is plain that the Wever faction deemed it, as it in fact was, of the greatest importance to their success, that they should themselves call the convention to order, and organize it with a chairman of their own selection; that to accomplish this they knew it was necessary to usurp the functions of the chairman of the county committee. They deemed it necessary to create a diversion, and make an apparent excuse for such usurpation. The obtaining, ex parte, of the injunction order, and keeping it secret until the moment arrived for organizing the convention, though it was possible and convenient to have served it hours sooner, was evidently one of the means planned to the end sought. It was planned to have Mannix, the procurer of the order, suddenly seize the moment when the chairman's attention was diverted in perusal of the order, to mount the platform and make the call, and create a chairman, and, when Chairman Dobie should discover that the order was harmless, and should proceed to exercise his rights and call the convention, to have him arrested, and removed from the room. This was clearly the scheme, and substantially how it was operated has been stated, and now the authors and workers of this scheme seriously

ask for judicial approval of their work. The excuse was one of their own creating; was specious, and did not excuse. The attempt by Mannix was the bold inexcusable usurpation of a stranger. He had no authority whatever under the usages of the party. He was not even a delegate to the convention. It was an illegitimate proceeding, and could not bear legitimate fruit. Party usage, not inconsistent with good morals or the letter or spirit of statute law, is a law to the convention. In strict conformity to a well-known, long-standing, and unvarying usage of the party, the chairman of the county committee called and organized the convention; and, since no subsequent act of this convention is called in question to discredit it, the nominations made by it must be accepted as the regular nominations of the Republican party.

The papers disclose other facts, but I do not see that they have any material bearing upon the question here involved. It appears that from the towns of Ausable, Altona, and Mooers (the regularly elected delegates from which towns voted in the convention called by Chairman Dobie) came second certificates representing the minority in the same primaries of such towns. These certificates were not signed by the officers of such primaries, but the delegates named in them were taken into the Mannix assemblage, and presumably participated in the vote for Chairman Duffy. The papers do not disclose that these self-appointed delegates had any title whatever to recognition as delegates. The undisputed facts appearing by the affidavits relating to the town of Beekmantown seem to be that there was a very large gathering of voters at the primary held there,—some five or six hundred voters; that partisan feeling was somewhat excited; that it was known to all that two tickets for delegates were in the field; that the room at which the primary was called would hold not to exceed 200 people; that it had but one door for entrance, and no other exit; that before and at the hour of opening the primary, the room was well filled with voters of the Wever faction; that the person who called the primary to order belonged to that faction, and the chairman elected, wholly by voters inside the room, also belonged to the same faction; that in some way the clerk of the primary was authorized by those inside to cast the vote for the delegates of the Wever faction, and then the chairman declared the primary adjourned; that the whole proceeding was accomplished in five or ten minutes; that a ballot was called for, but the call was unheeded; that other names for delegates were presented, but no vote was taken on these; that during these proceedings more than one-half of the voters were outside of the room, anxious to vote, and unable to do so, and wholly ignorant of what was going on, and unable to find out. It is true, the Wever faction present many affidavits alleging that everything was regular; that every one had an opportunity to vote; but they do not attempt to explain how it was possible to get 500 or 600 people into a room which would hold not to exceed 200, or how people on the outside could vote in the proceedings going on inside, or have their votes counted. Obviously, the majority of the voters, being outside, might vote on some proposition started on their own motion, but it is not at all likely that this swift-acting chairman would have regarded it as regular.

This feature of the affidavit, in the light of the admitted facts, must be regarded as facetious. The truth is obvious,—a majority of the voters did not vote and could not vote, owing to the methods adopted by the officers of this primary; that this method was adopted to prevent a full and fair expression, and to secure delegates favoring the Wever faction.

It was pertinently said by Justice Herrick (In re Broat, 6 Misc. Rep. 452, 27 N. Y. Supp. 176):

"Party caucuses should be the fair, full, and free expression of the party will, and such expression should not be thwarted by sharp practice, or throttled by force or fraud; and while it is not to be expected that political caucuses will be conducted with the order and decorum of a church meeting or a Sunday school, still fair play and good faith should prevail, and a substantial compliance with the party and state law be compelled."

It was the duty of the chairman at this primary to adopt such methods in conducting it as would secure to every voter his right to vote so that there might be a "fair, full, and free expression of the party will." The primary is the only place in which the citizen can express his choice of rulers within his party, and the law recognizes it, and takes the primary into its control. The action taken in those five or ten minutes inside that room wholly failed to discover or express the will of the majority of those entitled to vote, and desiring to vote. The conditions made it physically impossible by the methods adopted to discover such majority will, and, in the language of Justice Herrick in the Broat Case, "it would be a burlesque upon the primary election law to recognize persons so chosen, or rather designated, as regularly elected." The five men so designated were admitted to the Mannix assemblage. Immediately after the chairman declared the primary adjourned, it appears that a new chairman was elected in the same room, and a vote by ballot taken at the entrance to the room, and all voters given a free and full opportunity to vote. Five delegates were so elected, who took their seats in the convention called by Chairman Dobie.

Summarizing the foregoing, it appears by the proofs, and I so find, that, of the fourteen towns in the county, seven towns, by their regularly elected delegates, whose election is conceded, or concerning which there is no ground for dispute, were represented in the convention called to order and presided over by Chairman Dobie, and none of these towns were represented by any elected or accredited delegate in the Mannix assemblage; that such towns were Ausable, Altona, Black Brook, Champlain, Clinton, Ellenburg, and Mooers, making 35 votes; and, in addition, one regularly elected and certified delegate from Plattsburg (Dobie) 1 vote; in addition thereto were the delegates from the town of Beekmantown, elected by ballot, as stated, 5 votes,—thus making 41 votes, a full convention being composed of 70.

I find that in the Mannix assemblage, presided over by Duffy, there were of the delegates elected or entitled to take part in the Republican convention 29 delegates, and no more, and these were entitled to represent the following towns: Chazy, Dannemora, Peru, Saranac, Schuyler Falls, 5 each, 25; Plattsburg, 4; total, 29.

I find the convention organized by Dobie, chairman of the county

committee, and by him presided over as chairman of the convention, was the regular and only convention of the Republican party held in Clinton county on October 5, 1897, and that a majority of all the delegates duly elected in the 14 towns of the county took part and voted in such convention; that the certificate of nomination upon which appear the names of Everett C. Baker for member of assembly, Harrison Wood for county clerk, James H. O'Neil and Henry P. Gilliland for coroners, and which was filed with the clerk of the county, is the certificate entitled to credit, and the only certificate; that the names appearing therein are entitled to be printed upon the ballots to be used at the coming election as the nominees of the Republican party.