(Supreme Court, Special Term, New York County. October, 1900.)

ELECTIONS—OBJECTIONS TO NOMINATIONS—DETERMINATION BY POLICE BOARD —REVIEW.

Under Election Law (Laws 1896, c. 909) §§ 56, 66, providing that the supreme court may review the determination of the officer with whom certificates of nominations are filed as to conflicting claims of nomination, but the final order must be made before the last day fixed for filing certificates of nominations, which is required to be at least 15 days before election, the supreme court will review an order of such officer made on the fifteenth day before election, where the proceedings for review are presented before the expiration of such day.

Objections to the certificates of Joseph P. Hennessy and of Richard H. Mitchell for state senator for the Twenty-First senatorial district. Objections of Mr. Hennessy sustained. Objections of Mr. Mitchell overruled.

Stickney, Shepard & Ordway (Samuel H. Ordway, of counsel), for Hennessy.

John F. McIntyre, for Mitchell.

John Whalen, Corp. Counsel (Theodore Connoly, of counsel), for police board of the city of New York.

LAWRENCE, J. In this case the objections which were filed to the certificate of the nomination of Mr. Hennessy by Mr. Mitchell and to the certificate of Mr. Mitchell by Mr. Hennessy were filed respectively on the 9th and 11th of October. The first hearing before the police board was fixed for October 16th. The hearing was adjourned to the 17th, and then to the 19th, and the final adjournment was to the 20th of October inst. On the 22d of October a decision of the police board was rendered sustaining the objections to the certificate of Mr. Hennessy and overruling the objections to the certificate purporting to nominate Mr. Mitchell, the board determining that the convention which nominated Mr. Hennessy was not legally constituted and empowered under the law to make the nominations for the Democratic party in the Twenty-First sena-

torial district, and that the convention which nominated Mr. Mitchell was regularly constituted and legally held. Section 65 of the election law (Laws 1896, c. 909) provides that:

"A written objection to any certificate of nomination may be filed with the officer with whom the original certificate of nomination is filed within three days after the filing of such certificate. If such objection be filed, notice thereof shall be given forthwith by mail to the committee, if any, appointed on the face of such certificate for the purposes specified in section sixty-six of this act, and also to each candidate placed in nomination by such certificate. The questions raised by such written objection shall be heard and determined as prescribed in section fifty-six of this act."

It is not disupted in this case that the objections to the certificate were duly served, and the parties duly notified of such objections. Section 56 of the election law provides that:

"The supreme court, or any justice thereof, within the judicial district, or any county judge within his county, shall have summary jurisdiction upon complaint of any citizen, to review the determination and acts of such officer, and to make such order in the premises as justice may require, but such order must be made on or before the last day fixed for filing certificates of nominations to fill vacancies with such officer as provided in subdivision one of section sixty-six of this article. Such a complaint shall be heard upon such notice to such officer as the said court or justice or judge thereof shall direct."

The first subdivision of section 66 of the election law provides that the certificate of nomination therein referred to "shall be filed in the office in which the original certificate was filed * * * at least fifteen days before the election if filed with the county clerk or the board of police commissioners of the city of New York, * * * or the city clerk of any other city." It will be observed that in this case the decision of the police board sustaining the Mitchell certificate and overruling the Hennessy certificate was filed on Monday morning, just 15 days before the election, which is to occur on the 6th of November. In a case of this character, if the board or clerk has neglected to dispose of the objections to the certificate until the last day when a court or a justice thereof can review its decision, I have very strong doubts whether the provision of section 56 of the election law should be construed to be mandatory. This precise question was not before the court of appeals on the appeal taken in the case of In re Emmett, 150 N. Y. 538, 44 N. E. 1102. The question there was whether an appeal would lie to the appellate division of the supreme court from an order made under section 56 of the election law reviewing the determination of the filing officer upon a contested certificate of nomination. It had been held in the court below (Hatch, J., dissenting) that the appellate division could make no order which would be effective, and that the appeal should be dismissed. On the appeal to the court of appeals it was decided that the limitation as to 15 days applied only to the order of review provided for therein, and did not limit the time within which the appellate division may entertain and adjudicate an appeal from such an original order. It was not decided that no case could arise in which the supreme court, or a judge thereof, could review the decision of the filing officer, if the latter neglected to make his decision until after 15 days prior to the election had expired, or so near in time to the

expiration of said 15 days as to render a review by a justice of this court within that time impossible. It is obvious, if the construction is to prevail that a party is without remedy under such circumstances, that it is within the power of the board or county clerk in every instance to deprive a person claiming to have received a regular nomination from a political party, by simply deferring action until it is too late for a court or a justice to review its decision, of all the benefit of the statutory provision. Such cannot, I think, have been the intention of the legislature. Mandatory words used in a statute are not in all cases to be construed as imperative. Stewart v. Slater, 6 Duer, 83; Wood v. Chapin, 13 N. Y. 509; McRoberts v. Winant, 15 Abb. Prac. (N. S.) 210. It is the design of the election law that in contests arising under it technicalities should not be considered, but that substantial justice shall be done by giving to the majority of those duly elected to the convention which makes a nomination an opportunity to express their choice. See In re Clinton County Clerk, 21 Misc. Rep. 543, 48 N. Y. Supp. 407, per Kellogg, J.; affirmed in 20 App. Div. 637, 47 N. Y. Supp. 1133; French v. Roosevelt, 18 Misc. Rep. 307, 41 N. Y. Supp. 1080; In re Broat, 6 Misc. Rep. 445–452, 27 N. Y. Supp. 176. And, as was well said by Chief Justice Andrews in People v. Wood, 148 N. Y. 147, 42 N. E. 537:

"The object of elections is to ascertain the popular will, and not to thwart it. The object of the election laws is to secure the rights of duly-qualified electors, and not to defeat them. Statutory regulations are enacted to secure freedom of choice, and to prevent fraud, and not, by technical obstructions, to make the right of voting insecure and difficult."

I have read over the affidavits and proofs which were presented in support of and in opposition to the two certificates before the police board, and from them I think that it must be determined that at the meeting of the senatorial convention held at Morrisania Hall on the evening of October 5th substantially all the delegates both from the Thirty-Fourth and Thirty-Fifth Assembly districts were present. In that convention the Thirty-Fifth Assembly district was entitled to 201 delegates and the Thirty-Fourth assembly district to 175; making a total of 376. I am also satisfied by the preponderance of evidence that there was no election of a temporary chairman, and that no temporary organization was effected, before the recess was taken which is referred to in the affidavits. Attempts were made at such organization, but they were frustrated by the noise, tumult, and violence which prevailed in the hall. The affidavits are very conflicting upon this point, but the weight of the evidence, I am constrained to say, is with the Hennessy party or faction. The statement of 191 delegates that no organization was effected, and no temporary chairman chosen, before such recess, is corroborated by the affidavits of seven persons who are connected with the press, and not with either faction of the Democratic party. It is also to be noted that there is no affidavit from Mr. Moebus, who is the leader of the northern half of the Thirty-Fourth assembly district, sustaining the affidavits read in support of the Mitchell nomination as to the proceedings on the night of

·October 5th and on the morning of October 6th. Under the pri-
mary election law (section 10) it is provided that "the temporary
·chairman shall be chosen on the call of the roll, and, as the name
·of each delegate is called, he shall rise in his place, and declare
his choice for such officer"; and that, "unless the convention shall
otherwise order, the permanent chairman shall be chosen on roll
call." The chairman of the Thirty-Fifth assembly district and the
chairman of the southern half of the Thirty-Fourth assembly dis-
trict seem to have been designated to call the meeting to order;
but we have no affidavit from the officer who, under the rules and
usages of the Democratic party, was entitled to make such desig-
nation, as to who should make such call in the event of a contest
between the delegates as to the organization of the convention.
It seems to me, after reading the affidavits in this case, that the
conclusion must be reached that no action with reference to the
selection of a temporary or permanent chairman had been taken
when the .recess was taken, about 4:30 a. m., to 10 o'clock p. m.
·on the 6th of October. It is shown by the affidavits of 191 dele-
gates that that recess was taken by unanimous consent. Those
·delegates constitute more than a majority of the convention, and it
is clearly established that when the convention met on Saturday
·evening, October 6th, there was a majority of the whole number
·of delegates present, to wit, at least 191 delegates from the Thirty-
Fifth assembly district. It also seems to me to be established that
the convention was then and there organized in accordance with
the provisions of the primary law, and that at such convention.
Hennessy was nominated. So far as regards the convention which
met on the 8th of October, to which time it is claimed the con-
vention was adjourned, I deem it sufficient to say that I do not
think that the contention that 26 delegates from the Thirty-Fifth
assembly district attended can be sustained. Each of the 26 dele-
gates from the Thirty-Fifth assembly district who are claimed to
have attended that convention declares, as I understand the affi-
davits, under oath, that he was not present, but was present at
the convention on Saturday evening, at which Hennessy was nomi-
nated, and that he had voted for Hennessy. The statement that
they did attend the Mitchell convention on the 8th inst. cannot,
therefore, be true. For these reasons I am of opinion that the ob-
jections of Hennessy should have been sustained, and the objections
of Mitchell overruled.

Ordered accordingly.